UNITED STATES of America

v.

Max H. HOMER a/k/a Max H. Homer, Jr., Appellant.

No. 76–1395.

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1976.

Decided Nov. 18, 1976.

Stanley W. Greenfield, Greenfield & Minsky, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., W. D. Pa., Milton J. Carp, Carl L. LoPresti, Sp. Attys., Pittsburgh Strike Force, Jerome M. Feit, Robert H. Plaxico, Attys., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before VAN DUSEN and ROSENN, Circuit Judges, and CAHN,[*] District Judge.

## OPINION OF THE COURT

### PER CURIAM.

The appellant, Max H. Homer, was tried to a jury in the United States District Court for the Western District of Pennsylvania and convicted on two counts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (1970) (counts I and II of the indictment), and on one count of perjury in violation of 18 U.S.C. § 1623 (1970) (count V of the indictment).[1] He appealed to this court assigning a number of errors committed by the district court during the course of the trial. We affirm the judgment of the district court.

Appellant, who during the time covered by the indictment against him represented the Stowe Rox area near Pittsburgh in the Pennsylvania House of Representatives, was charged in count I of the indictment[2] with extorting property "in the form of money or checks" from Gordon Terminal Service, Inc., ("Gordon") in violation of 18 U.S.C. § 1951 (1970). Count II similarly charged appellant with extorting money under color of official right from Ruthrauff, Inc., in violation of 18 U.S.C. § 1951.[3]

Count V of the indictment charged the appellant, who had appeared before a grand jury investigating alleged violations of section 1951, with testifying falsely concerning the Gordon transaction. Specifically, the indictment charged that appellant made a false material declaration to the grand jury when he testified on August 29, 1974, that he had requested Ernest Bulgarelli, a Safety Inspector for the Commonwealth of Pennsylvania, to furnish construction plans to J. J. Balobeck, the architect for the Gordon warehouse.

---

[*] Edward N. Cahn of the United States District Court for the Eastern District of Pennsylvania sitting by designation.

1. Appellant was acquitted on four other counts charing attempted extortion, obstruction of justice, evasion of income tax, and false filing of an income tax return. The two remaining counts of the nine-count indictment were severed before trial.

2. Count I charged the defendant-appellant with extortion, in violation of 18 U.S.C. § 1951 (1970), by using his official position as a member of the Pennsylvania House of Representatives "to wrongfully and unlawfully obtain and attempt to obtain property of the value of $6,500, . . . in the form of money and checks, from Thomas Gordon and Ralph Castellucci as agents and representatives of the . . . Gordon Terminal Service, Inc. with the consent of the said Thomas Gordon and Ralph Castellucci, said consent being induced . . . under the color of official right, and by the wrongful use of fear, in that the defend-

ant did threaten the said Gordon Terminal Service, Inc., its agents and representatives, with delay and denial of the right to occupy a new warehouse which was important to the continuation of the said corporation's business."

3. Count II charged the defendant-appellant with unlawfully obtaining and attempting to obtain, under color of official right as a member of the Pennsylvania House of Representatives, "property of the value of $3,010.92 . . . from Ignatius Laux, as an agent and representative of . . . Ruthrauff, Inc. with the consent of the said Ignatius Laux, said consent being induced . . . by the wrongful use of fear, in that the said defendant did threaten the said Ruthrauff, Inc. its agents and representatives, with delay and denial of the right to occupy a building which was important to the continuation of the business of the said Ruthrauff, Inc.," in violation of 18 U.S.C. § 1951 (1970).

Inasmuch as the appellant challenges evidentiary rulings of the trial judge rather than the sufficiency of the evidence against him, we need not summarize the testimony adduced by the Government in support of the indictment. Appellant's principal contentions, both of which were briefed and argued orally on appeal, are that the district court erred: (1) in refusing to permit the defense to call nine witnesses, each of whom would have testified that in 1971 he or she was told by Patsy Bruno, Treasurer of the Local Democratic Party Campaign Committee, that Gordon Terminal Service, Inc., had made a political contribution through the appellant, Max Homer, to the Democratic Party; and (2) in refusing to grant the appellant's motion for a mistrial because of the prosecution's improper closing argument to the jury.

## I.

Appellant asserts that he had nine witnesses who were prepared to testify at trial that in 1971, when the offenses of extortion charged in count I of the indictment were alleged to have occurred, Patsy Bruno, the treasurer of the Stowe Rox Democratic Party organization for the 1971 general election, told each of them that Gordon had made a $5,000 political contribution to the Democratic Party through Homer.[4] Appellant contends this testimony, if believed, would support his contention that he was not an extorter or income tax evader; the "open and well known disclosure of the receipt of monies was the core of appellant's defense and highly probative [of] his contention that such notoriety is at once utterly inconsistent with the conduct of one who is alleged to be an extorter or an income tax evader." Brief for Appellant at 9.

The trial judge ruled that he "might" permit the nine witnesses to be called in the event that the Government challenged a record of the Allegheny County Department of Elections which the defense had introduced into evidence and which listed the $5,000 contribution from Gordon as campaign income. Homer insists that the Government did in fact challenge this record at least three times. The appellant contends that during the cross-examination of Mrs. Patsy Bruno, widow of the party treasurer, the prosecutor asked a series of questions implying that the election record was incomplete and that the $5,000 contribution recorded in the county election report was never received by the Democratic Party. Homer alleges that another inferential attack on the completeness of the record occurred when he himself was cross-examined by the prosecutor. Finally, asserts the appellant, the Government challenged the election record in its closing to the jury, when the prosecutor argued that Patsy Bruno's personal records showed no receipt of $5,000 from Homer or from anyone else. Homer therefore concludes that the condition set by the trial judge for the admission of the testimony of the nine witnesses was met and that the judge erred in excluding it. In addition, the appellant maintains that the testimony of those witnesses was admissible under Rules 804(b)(3), 804(b)(5), and 803(24) of the Federal Rules of Evidence.

The trial judge excluded the testimony of the nine witnesses for two reasons. First, he had already allowed the defense to introduce a photocopy of the official election record, signed by Bruno, which reflected the information to which the nine witnesses would purportedly have testified. Second, he found that the testimony lacked the circumstantial guarantees of trustworthiness required by the Federal Rules of Evidence for the admissibility of such hearsay. Fed. R.Evid. 803(24), 804(b)(3), 804(b)(5).

We need not decide whether the hearsay testimony of the nine witnesses was admissible under Rules 803(24), 804(b)(3), or 804(b)(5). That testimony was offered not as a defense to the extortion counts on which the appellant was convicted, but solely as a defense to the income tax evasion charges of which he was acquitted. In arguing for the admissibility of the testimony,

---

4. Bruno died on July 2, 1973, more than two years before Homer's trial.

defense counsel described the specific purposes for which it was offered:

> This is the defense to the income tax count. If he [Homer] did not use, and if he took the money by extortion under the most gross circumstances and gave it to the nunnery, he wouldn't be guilty of income tax evasion but might be guilty of extortion.

Inasmuch as the appellant was acquitted of the income tax evasion counts, we find no reversible error in the exclusion of testimony offered as a defense to those charges.[5] Moreover, evidence that Homer received the $5,000 from Gordon and delivered it to the local party treasurer is not probative of the charge that Homer exacted the money by extortion.

## II.

The appellant's contention that the trial judge erred in refusing to grant the defense motion for a mistrial is based on the following comment in the prosecutor's closing argument:

> Now this is a sensitive and important case, as Mr. Greenfield [defense counsel] told you, in more than one way. It is an important case because people are watching. There is a precedent going to be set here. People will want to know if they are going to be free from these oppressive tactics we have seen.
>
> We ask you to find the defendant guilty on all counts in the indictment, and by doing that, you will get a message across to all other people who would seek to use the power of their office to abuse it, if you will, under color of official right in instilling fear in business, that we are not going to stand for it, that the citizens and taxpayers are not going to stand for it, it has to stop now.

Citing the American Bar Association Standards Relating to the Prosecution Function[6] and cases construing language allegedly similar to that used by the prosecutor in the instant case, appellant argues that the foregoing comment introduced "facts beyond the record, and [tended] to cajole or coerce [the] jury merely for the sake of public approval."

In recent years we have had the occasion to admonish counsel for thoughtless and inappropriate remarks made in the course of heated and vigorously contested trials. At times, extemporaneous comments in a closing argument may exceed the bounds of good taste or propriety without necessarily rising to the level of reversible error. At other times, the comments are so grossly improper as to prejudice a defendant and deny him a fair trial. We have held remarks reflecting the prosecutor's personal opinion on the guilt of a defendant based on evidence not in the record to be per se reversible error. *United States v. Schartner*, 426 F.2d 470, 478 (3d Cir. 1970); *see United States v. Benson*, 487 F.2d 978, 981 (3d Cir. 1973). This, however, is not such a case.

 We acknowledge that the prosecutor's remarks were rash and inappropriate. As we have previously stated, however,

> [t]rials are rarely, if ever, perfect and improprieties of argument by counsel to the jury do not call for a new trial unless they are so gross as probably to prejudice the defendant and the prejudice has not been neutralized by the trial judge before submission of the case to the jury.

---

5. *Cf.* McCormick's Handbook of the Law of Evidence § 52, at 112 n. 15 (2d ed. E. Cleary 1972) ("[I]f a specific ground for admission is claimed in the offer of proof but is not applicable and the judge excludes the evidence, the proponent cannot complain if there was another ground for admission."); cases cited in J. Wigmore, Evidence § 17 at 81 (W. Reiser ed. Supp. 1975).

6. Standards 5.8(c) and (d) of the American Bar Association Standards Relating to the Prosecution Function provide:

5.8(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
5.8(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*United States v. Leftwich*, 461 F.2d 586, 590 (3d Cir.), *cert. denied*, 409 U.S. 915, 93 S.Ct. 247, 34 L.Ed.2d 178 (1972). *Accord, United States v. Somers*, 496 F.2d 723, 737 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974): "[W]e will reverse upon demonstrations of prosecutorial misconduct only in those situations in which prejudice inures to the defendant from the challenged improprieties." Our awareness of the nature of opening and closing arguments in an adversary proceeding and our concern for judicial administration preclude us from setting aside a verdict and ordering a new trial every time an advocate is verbally indiscreet unless his remarks are obviously prejudicial. In recent years this court has found prosecutorial conduct improper but not prejudicial in a number of cases. *See* cases cited in *United States v. Somers*, 496 F.2d at 736 n. 24.

■ The prosecutor's questionable comment constituted two small paragraphs in the sixty pages of his closing argument. He had previously cautioned the jury not to consider his remarks as evidence. The remarks were not so shocking as to suggest to the defense that it seek curative instructions immediately. Moreover, in response to defendant's subsequent complaint, the trial judge admonished the jury that they should determine the issues of fact "without bias or prejudice or sympathy as to any party." He further informed them that our legal system "does not permit jurors to be governed by sympathy, bias, or prejudice, or even public opinion." Finally, after admonishing the jury not to convict the defendant unless his guilt was proven beyond a reasonable doubt, the trial judge told the jury, "Keep constantly in mind you may not find the defendant guilty upon anything other than the evidence in this case."

We conclude that under these circumstances, the remarks of the prosecutor were not so pervasive, gross, or inflammatory as to constitute prejudicial error.

### III.

■ We have also carefully considered each of the remaining contentions urged by the appellant and find them without merit, to wit:

(1) that the court erred in refusing to permit the defense to call two witnesses, each of whom would have testified that he had been advised by one or more of the Ciamaccos that arrangements had been made to frame the appellant through the use of an oil company man and a heating and air conditioning man; [7]

(2) that the court erred in admitting the evidence of a One Thousand Five Hundred Dollar ($1,500) check made payable to Dr. Homer by J. J. Balobeck Associates, Government Exhibit 19; [8]

(3) that the court erred in refusing appellant's motion for mistrial when Government counsel cross-examined the appellant's witness, Beaver Parillo, on whether he and his brother were in debt for gambling; [9]

(4) that the court erred in permitting the case to be submitted to the jury on the theory of appellant's conduct while acting under color of official right; [10]

(5) that the court erred in failing to grant a severance of the extortion and false declaration counts.[11]

The judgment of the district court will be affirmed.

7. *See Donnelly v. United States*, 228 U.S. 243, 273–77, 33 S.Ct. 449, 57 L.Ed. 820 (1913); *United States v. Pena*, 527 F.2d 1356, 1362 (5th Cir.), *cert. denied*, 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976) (discussing the requirements set out in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)).

8. *United States v. Bloom*, 482 F.2d 1162 (8th Cir. 1973).

9. Fed.R.Crim.P. 52(a).

10. *United States v. Mazzei*, 521 F.2d 639, 643 (3d Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975).

11. *United States v. Pacente*, 503 F.2d 543 (7th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974); *United States v. Carson*, 464 F.2d 424, 436 (2d Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972).