**UNITED STATES of America**

v.

**Russell A. WERME, Appellant.**

**No. 90–1485.**

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 1990.

Decided July 30, 1991.

Rehearing Denied Aug. 27, 1991.

---

**60.** *Step–Saver Data Sys., Inc. v. Wyse Tech.,* 752 F.Supp. 181, 192–93 (E.D.Pa.1990).

Peter F. Vaira, James A. Backstrom, Jr., Buchanan Ingersoll P.C., Philadelphia, Pa., Theo W. Pinson (argued), Pinson & Bussey, Houston, Tex., for appellant.

Frank R. Costello, Jr. (argued), Office of U.S. Atty., Philadelphia, Pa., for appellee.

Before BECKER, NYGAARD and ALITO, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

A jury found Russell Werme guilty of conspiracy to violate the Travel Act, 18 U.S.C. §§ 371, 1952(a)(3). Werme's convic-tion was based on bribes he and Eugene Brault paid when they ran and managed B & B Insulation Company. We have juris-diction pursuant to 28 U.S.C. § 1291. We will affirm.

## I.

## FACTS AND PROCEDURE

United Engineers and Constructors ("United") was the primary contractor on the Seabrook Nuclear Power Plant con-struction project in Seabrook, New Hamp-shire. B & B, a subsidiary of Insulco, Inc., desired to participate in the Seabrook project as a subcontractor. Werme, then President of Insulco, Inc. learned that B & B was not on the qualified subcontrac-tor/bidder's list. Werme sent two B & B salesmen to meet with Timothy McCuen, United's Chief Buyer, to remedy this situa-tion. The B & B salesmen's efforts failed because McCuen said he wanted to meet with a higher level B & B employee.

McCuen was dishonest. While employed by United, he accepted bribes in exchange for confidential bid information. McCuen was charged with bribery in 1981, but ne-gotiated a plea and began cooperating with the federal government in its bribery and kickback investigations. McCuen did not, however, tell the FBI about bribes he ac-cepted in connection with the Seabrook con-tract. When these bribes were discovered, Ronald Mizzau, United's buyer on the Sea-brook project, pleaded guilty to aiding and abetting McCuen in his bribery scheme on Seabrook. McCuen was then also charged with taking bribes, entered into a second agreement, and pleaded guilty to bribery. The details regarding McCuen's receipt of bribes on the Seabrook progress are as follows.

In 1982, Frank Farese, a B & B consul-tant acquainted with McCuen, arranged a meeting between Werme and McCuen to discuss selling Seabrook bid information to Werme. At a January 1983 meeting in Philadelphia, Werme paid McCuen $2000: the first of several bribes for confidential bidding information.

In April 1983, Werme used Farese as a messenger to give McCuen $4000 for access to competing Seabrook bids. Werme called defendant Eugene Brault, the sales manager of B & B, in Houston, and Brault flew from Texas to Philadelphia, where both men allegedly examined the competing bids before B & B submitted its proposal.

In August 1983, United sought clarification of subcontractors' bids. Again, Werme made arrangements with McCuen to preview competing bids. This time, McCuen received free use of a rental car as payment. In return, he left Werme copies of the competing bids in a hotel room. In September 1983, Brault and Werme's secretary travelled to Philadelphia to prepare B & B's bid and to view confidential bid information.

In April 1984, when United solicited a re-bid on the Seabrook contract, Werme and Brault once again arranged to pay McCuen $3000 for confidential bid information. The day the re-bids were due, Brault paid $3,000 to McCuen in Philadelphia. As before, McCuen left copies of competing bids at a hotel where Brault retrieved them.

Werme and Brault were indicted and each charged with: (1) one count of conspiracy to violate the Travel Act, 18 U.S.C. § 371; and (2) one count of violating the Travel Act, 18 U.S.C. § 1952(a)(3). A jury found Werme guilty of both counts, and Brault guilty of the Travel Act violation but acquitted him of conspiracy.

The district court granted Brault's and Werme's motion for judgment of acquittal on the Travel Act violation, finding that the special verdict did not set forth a theory upon which they could be found guilty. The court denied Werme's motion to acquit him of conspiracy. The district court sentenced Werme to a suspended three-year prison term and placed him on probation for five years, during which he must perform 300 hours of community service.

## II.

### ISSUES

Werme makes three allegations of error. First, he challenges the sufficiency of the conspiracy count of the indictment, claiming it did not contain all elements of the underlying Travel Act offense and, consequently, neither put him on notice of the charges against him nor afforded him double jeopardy protection. Second, Werme claims the district court erred by failing to give the jury a cautionary instruction he requested after the government used McCuen's and Mizzau's guilty pleas in its case against him and by allowing the government to inquire whether McCuen ever had been charged with extortion. Third, Werme claims the district court erred by allowing the prosecutor to argue to the jury, without supporting evidence, that Werme paid a bribe in September 1983.

We conclude that the conspiracy count of the indictment was legally sufficient, and that the district court did not err by allowing the prosecutor to argue the September 1983 bribe to the jury. We also conclude that it was harmless error to introduce the guilty pleas of McCuen and Mizzau and to allow the inquiry concerning whether McCuen had been charged with extortion. Thus, we will affirm.

## III.

### SUFFICIENCY OF THE INDICTMENT

Generally, each count of the indictment must set forth a sufficient description of the crime charged. The charging portion of a conspiracy count includes all paragraphs within that count except for allegations under the overt acts heading, unless those allegations are expressly incorporated by reference. *Joplin Mercantile Co. v. United States*, 236 U.S. 531, 535–36, 35 S.Ct. 291, 293, 59 L.Ed. 705 (1915); *United States v. Knox Coal Co.*, 347 F.2d 33, 38 (3d Cir.), *cert. denied*, 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965). In addition, the charging portion of a conspiracy count may not rely upon other counts within the indictment to cure deficiencies, unless those counts too are expressly incorporated by reference. *See,*

*e.g., United States v. Scanzello,* 832 F.2d 18, 23 (3d Cir.1987).

The charging portion of this conspiracy count alleges that Werme and Brault, along with others, "did conspire, combine, confederate and agreed to violate Title 18, United States Code, Section 1952(a)(3)." It further alleges that the purpose of the alleged conspiracy was to obtain confidential bid information in exchange for money or "other things of value." Finally, the charging portion alleges that the conspiracy's purpose was implemented through overt acts of bribery.

■ When reviewing the sufficiency of the indictment, we look at the entire indictment and determine de novo:

(1) whether the indictment contains the elements of the offense intended to be charged and sufficiently appraises the defendant of [the crime] he should be prepared to meet;

(2) whether the indictment is specific enough to make a plea of double jeopardy possible.

*United States v. Wander,* 601 F.2d 1251, 1258 (3d Cir.1979) (citations omitted). *See also United States v. Sebetich,* 776 F.2d 412, 426 (3d Cir.1985), *reh'g denied,* 828 F.2d 1020 (1987), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988).

■ An indictment charging a conspiracy under 18 U.S.C. § 371 need not specifically plead all of the elements of the underlying substantive offense. *Wander,* 601

F.2d at 1259 ("Conspiracy indictments need not allege all of the elements of the offense which the defendants are accused of conspiring to commit.") (citation omitted); *United States v. Knox Coal Co.,* 347 F.2d 33, 38 (3d Cir.1965). Rather, "[i]n a conspiracy count, the conspiracy is the gist of the offense ... [and the indictment] need not plead the substantive offense letter-perfect because the purpose of the conspiracy may have been accomplished even though such activity fell short of completing a substantive offense." *Knox Coal Co.,* 347 F.2d at 38 (citation omitted). *See also Williamson v. United States,* 207 U.S. 425, 447, 28 S.Ct. 163, 171, 52 L.Ed. 278 (1908) (Where the indictment alleges a conspiracy, "certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is required in stating the object of the conspiracy."). To be legally sufficient, a conspiracy count in an indictment need only set forth "the agreement and specific intent to commit an unlawful act, and when required by statute, an overt act." *Wander,* 601 F.2d at 1259. A conspiracy indictment need not allege every element of the underlying offense, but need only put defendants on notice that they are being charged with a conspiracy to commit the underlying substantive offense.[1]

In *Wander,* the defendants were charged with a conspiracy to violate the Travel Act. The defendants challenged the conspiracy count on sufficiency grounds, claiming that it failed to allege an unlawful act after the

---

1. Although *Wander* provides that "[c]onspiracy indictments need not allege *all* of the elements of the offense which the defendants are accused of conspiring to commit," 601 F.2d at 1259 (emphasis added), we do not read it as also providing that a conspiracy indictment need not allege *any* of the elements of the underlying offense. If the charging language in this case simply had alleged that Werme conspired to violate "18 U.S.C. § 1952(a)(3)," we think that it would have been legally insufficient. It is well settled that an omission in the charging language of an indictment cannot be cured by a mere statutory citation. *See, e.g., United States v. Beard,* 414 F.2d 1014, 1015 (3d Cir.1969) (citation to 18 U.S.C. § 2314 in indictment did not remedy failure to allege "unlawful or fraudulent intent"); *United States v. Zangger,* 848 F.2d 923, 925 (8th Cir.1988) ("If an essential element of the charge has been omitted from the indict-

ment, the omission is not cured by the bare citation of the charging statute."). Reliance on a bare statutory citation is particularly problematic when the underlying offense is an alleged violation of the Travel Act, because 18 U.S.C. § 1952(b) lists as "unlawful activity" a variety of criminal conduct, including extortion, bribery, and arson. Absent further detail, therefore, an indictment simply charging a conspiracy to violate "18 U.S.C. § 1952(a)(3)" would not indicate which "unlawful" activity the defendant conspired to promote through interstate activity. This problem, however, does not exist in this case; for the paragraphs set forth in the Plan and Purpose section of the conspiracy count (which are considered part of the "charging language," *see supra* at 111) clearly reveal that Werme is charged with conspiracy to promote *commercial bribery* through interstate activity (*see supra* at 112).

interstate travel. We disagreed, holding that the omission did not render the indictment fatally flawed. *Wander,* 601 F.2d at 1258–1259.

■ The conspiracy count of the indictment against Werme is sufficient and does not amount to "a deprivation of a significant protection of the indictment process." *Wander,* 601 F.2d at 1258. The conspiracy count, read together with the Plan and Purpose section of that count, sets out all three *Wander* elements by charging that Werme and Brault (i) "did conspire, combine, confederate and *agreed*" (ii) with the *intent* to violate the Travel Act, 18 U.S.C. § 1952(a)(3) and (iii) that the conspiracy involved the unlawful *act* of bribing McCuen.

In this case, the indictment satisfies the sufficiency requirement because it put Werme on notice that he was charged with a conspiracy to commit state law bribery through interstate travel or use of interstate facilities, a violation of 18 U.S.C. § 1952(a)(3).[2]

The conspiracy count of the indictment is also specific enough to provide the double jeopardy protection required by *Wander.* The count describes a conspiracy "from at least January 1983 to and including April 19, 1984" in "the Eastern District of Pennsylvania and elsewhere," to obtain "bids containing confidential information" from competitors on the Seabrook project for "money and other things of value." App. at 13A–14A. This description is adequate to describe Werme's crime and to protect Werme from attempts to prosecute him again for the same conspiracy to bribe charged in this indictment. *Grady v. Corbin,* — U.S. —, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990) (The double jeopardy clause bars subsequent prosecutions for conduct establishing an essential element of an offense for which the defendant has already been prosecuted.); *United States v. Esposito,* 912 F.2d 60, 64–65 (3d Cir. 1990), *cert. dismissed,* — U.S. —, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991).

### IV.

### GUILTY PLEA EVIDENCE

#### A.

Werme contends that the district court erred by admitting without a cautionary instruction evidence that McCuen and Mizzau, who allegedly participated in the same criminal conspiracy, had pleaded guilty to related offenses. Werme maintains that the government improperly introduced this evidence as substantive proof of his guilt. The government contends the evidence was proper because it bore on the witnesses' credibility and because McCuen's plea was relevant to rebut the defense claim that he was acting as a government agent. We hold that Werme's counsel did properly request a jury instruction as to the limited purposes for which the evidence could be used, but that the failure to give such an instruction in this case was harmless error.

■ We have long recognized that evidence of another party's guilty plea is not admissible to prove the defendant's guilt. *See, e.g., United States v. Gambino,* 926 F.2d 1355, 1363 (3d Cir.1991); *Bisaccia v. Attorney General of New Jersey,* 623 F.2d 307 (3d Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *United States v. Toner,* 173 F.2d 140 (3d Cir. 1949). As we recently noted in *Gambino,* however, evidence of a guilty plea or plea agreement may be introduced for other, permissible purposes. *Gambino,* 926 F.2d at 1363.

**2.** Werme relies on *United States v. Hooker,* 841 F.2d 1225, 1229–1230 (4th Cir.1988). But *Hooker* is distinguishable. Hooker was charged with a conspiracy to violate 18 U.S.C. § 1962(c). He challenged the sufficiency of that indictment, arguing that the charge merely paraphrased the statute and failed to allege the essential element of an effect on interstate commerce. *Hooker,* 841 F.2d at 1227. The Court of Appeals found the indictment insufficient because "mere citation of the statute under which the indictment issues will [fail to] satisfy the requirement that the indictment contain a clear statement of the elements of the offense charged." *Hooker,* 841 F.2d at 1229–1230. Werme's case differs from *Hooker* because here the charging section goes on to describe the purpose of the conspiracy and overt acts in furtherance of that conspiracy.

█ The most frequent purpose for introducing such evidence is to bring to the jury's attention facts bearing upon a witness's credibility. *See id.* Proof that a witness has pleaded guilty or has agreed to plead guilty is highly relevant to show bias, a recognized mode of impeachment. *United States v. Abel,* 469 U.S. 45, 49, 105 S.Ct. 465, 467, 83 L.Ed.2d 450 (1985). The term "bias" is used "to describe the relationship between a party [in this case the prosecution] and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Id.* at 52, 105 S.Ct. at 469. A witness who has pleaded guilty may have a tendency to favor the prosecution because of concern about the prosecution's position regarding sentence or for other reasons. "Proof of bias is almost always relevant" and, unlike "less favored forms of impeachment," may be shown by "extrinsic evidence." *Id.* Moreover, under Fed.R.Evid. 607, a witness may be impeached by any party, "including the party calling the witness." Thus, in *Gambino,* 926 F.2d at 1363, we wrote:

> In any criminal trial, the credibility of the prosecution's witnesses is central. By eliciting the witness' guilty plea on direct examination, the government dampens attacks on credibility, and forecloses any suggestion that it was concealing evidence. Such disclosure is appropriate.

█ Evidence of a guilty plea may be admissible for other permissible purposes in addition to impeachment. *See id.* Here, we agree with the government that evidence of McCuen's guilty plea was admissible to rebut the defense assertion that McCuen was acting as a government agent when he engaged in the activities that formed the basis for that plea. McCuen's willingness to plead guilty to a criminal charge based on these activities was relevant to show that he did not believe he was acting as a government agent.

█ While evidence of a guilty plea may be admissible for impeachment and other permissible purposes, the party against whom the evidence is offered is entitled to a limiting instruction upon request. Rule 105 of the Federal Rules of Evidence provides that: "[t]he court, upon request, *shall* restrict the evidence to its proper scope and instruct the jury accordingly" (emphasis added). Because evidence of a co-conspirator's guilty plea is extremely prejudicial to the defendant on trial absent such an instruction, compliance with the mandatory duty imposed by Rule 105 is particularly important. We conclude Werme properly objected to the admission of the guilty pleas and asked the district court to give a limiting instruction to the jury against using the pleas as substantive evidence of his guilt. The following exchange between the court and Werme's counsel occurred in chambers:

MR. PINSON: It's my understanding that while Mr. McCuen is on the stand, you're going to offer up some evidence of [McCuen's] conviction.

\* \* \* \* \* \*

MR. COSTELLO: Yes.

MR. PINSON: Okay. Well, Your Honor, I don't intend to go into exactly what he pleaded guilty to other than the fact that it was a bribery transaction. And the only reason why I bring it up is that from this vast wealth of potential illegal transactions that Mr. McCuen could have entered a plea to, he entered a plea to the $3,000 that is the subject matter of this litigation. And I think if they introduce that specific conviction, *we're entitled to an instruction at a later time as far as the weight that should be given that.* I mean ordinarily they wouldn't be offering up that particular type of evidence. It would come in by way of impeachment.

\* \* \* \* \* \*

THE COURT: You mean the normal instruction regarding you should take into account the motivation of an individual who has been convicted and comes in and testifies or what?

MR. PINSON: No. The fact that ...

THE COURT: Or the actual—the nature of the conviction.

MR. PINSON: Right. Yes, sir. *The fact that he entered a plea to a bribery transaction involving $3,000 cannot be used to infer that we were guilty of paying the bribe.*

\* \* \* \* \* \*

MR. COSTELLO: Well, Your Honor, I can tell you right now. Basically at some point today, it'll happen today, I'll ask him did he plead guilty to any crimes and what were the crimes. And one of those crimes would be accepting the $3,000, which is the subject of this prosecution.

App. at 96a–100a (emphasis added).

 It is clear that Werme took issue with the evidence and did indeed request a curative instruction. Under these circumstances, it was error for the court not to give one. *See United States v. Gullo*, 502 F.2d 759, 761 (3d Cir.1974) ("[W]hile the evidence of a guilty plea by a co-conspirator is not admissible ... under some circumstances curative instructions are adequate to remove the harm" to defendant.) (citations omitted); *United States v. Restaino*, 369 F.2d 544, 545 (3d Cir.1966) (When the trial court told the jury of co-defendants' guilty pleas, we found no error but admonished the trial court that "cautionary instructions should be given."); *Toner*, 173 F.2d at 142 ("The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else."); *Bisaccia v. Attorney General of the State of New Jersey*, 623 F.2d 307 (3d Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). The next question before us is whether or not the error is

harmless.[3] We conclude that it is harmless error.[4]

In *Bisaccia*, we recognized that, under certain extreme circumstances, use of a co-conspirator's guilty plea could result in sufficient fundamental unfairness to give rise to a denial of due process. 623 F.2d at 313 ("Under the circumstances here, the admission of the co-defendant's guilty plea, the failure of the trial judge to give cautionary instructions to the jury about this evidence and the prosecutor's comments on this evidence so exceeded the tolerable level of ordinary trial error as to amount to a denial of constitutional due process."). Positing the *Bisaccia* panel's resolution of the issue before it—to wit, whether under the facts of that case the government's improper use of a co-conspirator's guilty plea case was error of constitutional proportions and thus was cognizable in a federal habeas proceeding—we think that in non-extreme cases, such as this one, the government's use of such a plea without cautionary instructions constitutes non-constitutional, evidentiary error.

As a result, we are not required to determine whether the district court's erroneous admission of McCuen's and Mizzau's guilty pleas was harmless "beyond a reasonable doubt," *see Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). To ascertain the harmlessness of the error, we instead must apply the "high probability" standard of appellate review set forth in *Government of Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976). Under *Toto*, errors in a criminal case are harmless if it is "highly probable" that they did not affect a party's substan-

---

**3.** We note that harmless error analysis is appropriate in this setting, since the error alleged is a "trial error," rather than a structural defect "affecting the framework within which the trial proceeds." *Arizona v. Fulminante,* — U.S. —, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991).

**4.** Because of the great potential for unfairness resulting from the introduction of a co-conspirator's guilty plea, we urge the district courts not to leave resolution of objections thereto to the vagaries and pressures of trial but rather, in exercise of their case management prerogatives, to flush out such problems before trial. This

can be done by encouraging counsel to file *in limine* motions and by holding hearings on such motions (or taking the matter up at pretrial or status conferences). *Inter alia,* the government can be called upon to state its proposed use of such evidence, and the defense can be called upon to state whether it proposes to impeach government witnesses on bias or credibility grounds by reference to the guilty plea. At such conferences or hearings, the precise nature of cautionary or jury instructions can be worked out, and hence not be forgotten in the exigencies of trial.

tial rights. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 924 (3d Cir.1985). " 'High probability' requires that the court have a 'sure conviction that the error did not prejudice the defendant,' but need not disprove every 'reasonable possibility' of prejudice." *United States v. Grayson*, 795 F.2d 278, 290 (3d Cir.1986) (quoting *United States v. Jannotti*, 729 F.2d 213, 219–20 & n. 2 (3d Cir.1984)).

We conclude that it is "highly probable" that admitting McCuen's and Mizzau's guilty pleas did not contribute to the jury's verdict. The evidence against Werme was overwhelming. In addition to the testimony of McCuen and Farese detailing the scheme and Werme's involvement in it, the government introduced transcripts of a conversation between Farese and Werme that took place on May 22, 1984. Farese was wearing a body wire and recorded the following exchanges:

> WERME: And uh, (pause) yeah uh, I wanna, I wanna see the bids.
>
> FARESE: Tell him your gonna have the money up there one way or another.
>
> WERME: Um hum.
>
> FARESE: Gene [Brault] will have it.
>
> WERME: Um hum.
>
> FARESE: Okay, I'll do that.
>
> WERME: Thanks partner.

App. at 181a.

Other portions of this recording introduced at trial included Werme and Farese adding up the various payments made to McCuen, App. at 184A–185A, and a conversation in which Werme rationalized his actions:

> WERME: And I'd say that, I'd guarantee I'd say that in court, I'd say that's ah compare prices, is the client gettin', gettin' an equal product? Yes. Is he getting it at the cheaper price than anybody else. Yes. And I believe that totally. It's not a deal of sayin' hey, I'mma pay you twenty five thousand dollars and well, throw these other suckers out and add five hundred thousand ...
>
> FARESE: Yeah ...

> WERME: or million dollars to my contract, it ain't the deal.
>
> \* \* \* \* \* \*
>
> So I don't have to apologize.

App. at 187a–188a.

In light of the more substantial and direct evidence against Werme, we have a "sure conviction" that the evidence that McCuen and Mizzau had pleaded guilty to related offenses did not prejudice Werme, and admitting it without a curative instruction was harmless error.

## B.

■ On direct examination, the prosecutor asked McCuen if he was "ever charged with extortion." This question was obviously designed to contradict Werme's assertion that he was a victim of McCuen's extortion. In other words, the prosecutor sought to have the jury infer that because McCuen was not charged with extortion, no extortion took place. Werme, in response to the question, immediately moved for a mistrial, but the judge refused his motion. We think that the prosecutor's question was improper. To rebut Werme's defense of extortion, the government was free to ask McCuen whether he had ever threatened anybody, but we think that the district court erred in allowing the prosecutor to inquire whether McCuen had been *charged* with extortion.

As we have explained above, the rule that a defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether someone else has been convicted of the same charge, is founded upon the notion that another person's guilty plea or conviction with respect to similar or identical charges has only slight probative value on the question of the defendant's guilt, but is extremely prejudicial. *See Gambino*, 926 F.2d at 1363. Whether a witness was *charged* with a related offense is even less probative of guilt than a witness's conviction, yet it carries the same potential for extreme prejudice.

A number of factors may affect the government's charging decision. In this

case, we cannot be sure why the government only charged McCuen with bribery, rather than extortion or both. Suffice it to say that the government's decision not to charge McCuen with extortion has only slight probative value on the question whether extortion actually occurred in this case. Yet presenting this evidence to the jury could have prejudiced Werme's extortion defense, particularly in view of the district court's failure to instruct the jury regarding the relevance, if any, of the government's charging decision.

■ Although we find the district court erred by admitting the question about whether McCuen was charged with extortion, we are satisfied that the error was harmless. Fed.R.Crim.P. 52(a). More precisely, we conclude that it is "highly probable," given the very strong evidence against Werme, *see supra* at pp. 115–116, that the error did not contribute to the jury's verdict. *Toto*, 529 F.2d at 284.

## V.

### THE SEPTEMBER 1983 BRIBE

■ Werme contends that the district court erred by allowing the prosecutor to ask him on cross-examination whether a bribe was paid in September 1983. Werme further contends that the prosecutor improperly argued the existence of a September 1983 bribe to the jury in his summation.

■ The scope of cross-examination is left to the sound discretion of the trial court, and this court will reverse only for an abuse of that discretion. *United States v. Reed*, 724 F.2d 677, 679 (8th Cir.1984). In this case, Werme contends that the prosecution had no good faith basis for asking on cross-examination about a bribe in September 1983. We disagree. Evidence was submitted that Brault had made a trip to Philadelphia in September 1983 to view confidential bid information. In addition, there was a transcript of an April 18, 1984

tape recorded conversation between Werme and Farese in which Werme referred to a payment made "last time." The "last time" Brault or Werme received confidential information was September 1983. Finally, in another recorded conversation, Werme reviews the payments made to McCuen and asks "[w]asn't there one other one in there?" This evidence provides a sufficient good faith basis for the prosecution's cross-examination of Werme about a September 1983 bribe.[5]

■ Before closing arguments, Werme sought to prevent the prosecutor from referring to a September 1983 bribe in summation. The district court initially was inclined to prohibit comment on the bribe, but later concluded that the prosecutor could argue the reasonable inference of the bribe, but could not argue the amount of the bribe.

■ The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence. *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir.1982). In *Scarfo*, we noted that "the appropriate inquiry is whether such remarks, in the context of the entire trial, were sufficiently prejudicial to violate the defendant's due process rights." *Id.* The prosecutor offered an inference of a bribe based upon the recorded conversations, Brault's trip to Philadelphia to obtain confidential information in September 1983, and the pattern of bribes being made whenever confidential information was received. In this case, we cannot say that the prosecutor's comment on the inference that a bribe was made in September 1983 was so prejudicial as to violate Werme's due process rights.

## VI.

### CONCLUSION

The conspiracy count of this indictment is sufficient because it sets forth the essen-

---

5. In like manner, we reject Werme's contention that the evidence about the September 1983 bribe violated Fed.R.Evid. 404(b). "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). On this record, we conclude that a jury could reasonably conclude that a bribe was made in September 1983 and that Werme was involved in making the bribe.

tial elements under 18 U.S.C. § 371, puts Werme on notice that he is being charged with a conspiracy to violate the Travel Act, 18 U.S.C. § 1952(a)(3), and allows him to plead his conviction as a bar to future prosecution. The district court committed a harmless error by admitting the guilty pleas of McCuen and Mizzau into evidence and by allowing the prosecutor to inquire whether McCuen had been charged with extortion. Finally, the district court did not err by allowing the prosecutor to argue the September 1983 bribe to the jury. For the foregoing reasons, we will affirm Werme's conviction for conspiring to violate the Travel Act.