

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2002

# USA v. Bates

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2893

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Bates" (2002). *2002 Decisions.* Paper 353.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/353

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 01-2893/2894/3023
_____

UNITED STATES OF AMERICA

v.

DEAN BATES
        Appellant

RONALD PICKARD
        Appellant

RENALDO PHILBERT
        Appellant

_____

On Appeal from the District Court
of the Virgin Islands, Division of St. Croix

District Court Judge: The Honorable Raymond L. Finch, Chief Judge
(Criminal No. 99-00063)
_____

Argued May 14, 2002

Before: AMBRO, FUENTES, and GARTH, Circuit Judges.

(Opinion Filed: June 12, 2002)
_____

Thurston T. McKelvin
Federal Public Defender
Patricia Schrader-Cooke (argued)
Assistant Federal Public Defender
P.O. Box 3450
St. Croix, VI 00822
Counsel for Appellant Dean Bates

George W. Cannon, Jr. (argued)
No. 70 & 70-A (115) Queen Street
Frederiksted, St. Croix
U.S. Virgin Islands 00840
Counsel for Appellant Ronald Pickard

Jomo Meade (argued)
#112 Queen Cross Street

Frederiksted, St. Croix
U.S. Virgin Islands 00840
Counsel for Appellant Renaldo Philbert

David Atkinson, United States Attorney
St. Clair Theodore, Asst. United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix 00820-4951

Ralph F. Boyd, Jr., Assistant Attorney General

Jessica Dunsay Silver
Tovah R. Calderon (argued)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Appellate Section, PHB 5001
Washington, D.C. 20530
Counsel for Appellee, United States of America

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge:

Appellants Dean Bates, Ronald Pickard, and Renaldo Philbert are former Virgin Islands police officers who worked on the island of St. Croix from 1994 until their arrest in 2000. On February 17, 2000, a federal grand jury charged the defendants in a forty-one count indictment with violating various federal and local criminal statutes, including 18 U.S.C. 241 (conspiracy against rights); 18 U.S.C. 924(c) (use of a firearm during a crime of violence); 14 V.I. Code Ann. 703(1) (oppression); and 14 V.I. Code Ann. 297 (2) (assault in the third degree). The three officers were tried together before a jury from July 5, 2000 until July 26, 2000. Prior to the trial, each defendant filed a motion for severance of defendants and/or counts. The motions were denied on the basis that the charges were intertwined and because Defendants had failed to establish that a joint trial would result in substantial prejudice and a manifestly unfair trial for any of them.

After the Government's case, Defendants moved for a judgment of acquittal. The District Court denied the motions as to all counts except for the count of conspiracy, concluding that the government failed to prove the existence of an agreement in violation of 18 U.S.C. 241. At the conclusion of all of the evidence, the jury found Pickard guilty on Counts 2, 15, and 16-19, Bates guilty on Counts 16-19, and Philbert guilty on Counts 24-26. After the verdicts were returned, Defendants moved for a judgment of acquittal or for a new trial on the grounds that the evidence presented against them was insufficient to sustain the verdicts. Pickard and Bates further claimed that they were unfairly prejudiced by statements that the AUSA made at trial and during his closing remarks. The District Court denied all of Defendants' post-trial motions. This timely appeal ensued.

On appeal, Pickard argues that prosecutorial misconduct impermissibly tainted his trial; that his motion for severance was improperly denied by the District Court; and that the evidence introduced against him was insufficient to sustain his conviction. Bates argues that prosecutorial misconduct similarly cast an impermissible taint over his trial. He also argues that his severance motion was improperly denied, and that the evidence presented against him at trial was inadequate to support his conviction. Philbert argues that the District Court abused its discretion when it denied his motion for severance, and

that the evidence presented at trial did not establish the requisite elements of the crimes of which he stood accused. Discerning no error in the rulings of the District Court, we affirm the judgments of conviction as to all three defendants.

## I. Standards of Review

The District Court in this case  had subject matter jurisdiction over the action pursuant to 18 U.S.C.  3231, 48 U.S.C.    1611, 1612, and V.I. Code Ann. Tit. 4   32. This court has jurisdiction over this appeal pursuant to 28 U.S.C.   1291 and 18 U.S.C. 3742. We review de novo the joinder of defendants under Federal Rule of Criminal Procedure 8. See, e.g., United States v. Thornton, 1 F.3d 149, 152 (3d Cir. 1993). We review the District Court's determination as to the requests for severance pursuant to Federal Rule of Criminal Procedure 14 for abuse of discretion. See, e.g., United States v. Boyd, 595 F.2d 120, 125 (3d Cir. 1978). A defendant seeking to establish such an abuse of discretion on appeal shoulders a "heavy burden," and "it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981).

It is well established that the conduct of an AUSA does not always warrant the granting of a new trial. United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995). A conviction should only be vacated where "the prosecutor's remarks, taken as a whole, were sufficiently prejudicial to have deprived the defendant of his right to a fair trial." United States v. Retos, 25 F.3d 1220, 1224 (3d Cir. 1994) (quotations and citations omitted).

In determining whether to reverse a conviction on the basis that the evidence introduced at trial cannot support a guilty verdict, we ask whether there was substantial evidence adduced that, when viewed in the light most favorable to the Government, could have supported the jury's decision. See, e.g., United States v. Casper, 956 F.2d 416, 421 (3d Cir. 1992).


## II. Joinder/Severance

We conclude that joinder of both defendants and offenses was proper under Fed. R. Crim. P. 8, and thus the District Court's denial of the Defendants' motions for severance did not constitute an abuse of discretion. Under Fed. R. Crim. P. 8(a), two or more offenses may be joined against a single defendant if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Pursuant to Fed. R. Crim. P. 8(b), two or more defendants may be charged together if they "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." Here, since the indictment charged more than one defendant in at least twelve of the counts, the Rule's "same act or transaction" standard is satisfied.

Additionally, joinder was proper because all three defendants were charged in Count I with a conspiracy, and in subsequent counts with criminal acts in furtherance of this conspiracy. "In determining whether two offenses or defendants were properly joined, the reviewing court must look to the indictment and not the subsequent proof adduced at trial." U.S. v. McGill, 964 F.2d 222, 241 (3d Cir. 1992). The government argued at trial that Bates, Pickard, and Philbert were members of a group of Virgin Islands Police Officers who called themselves the "Primos" and engaged in the violation of civil rights and the use of excessive force, usually against homeless people and persons not from St. Croix, in the discharge in their duties. Under this rationale, and in light of the fact that Count 1 of the indictment clearly charges all defendants with being members of the same conspiracy, joinder is proper. Indeed, the joinder of police officers charged with conspiring to violate civil rights on multiple occasions is not unusual. See, e.g., United States v. Garza, 754 F.2d 1202 (5th Cir. 1985); United States v. Ellis, 595 F.2d 154 (3d Cir. 1979).

The fact that the District Court ultimately dismissed the conspiracy count is of no moment. As previously stated, in determining joinder, the court looks to  the indictment and not to the "subsequent proof adduced at trial." Thornton, 1 F.3d at 153 (quotations and citations omitted). Here, many of the counts in the indictment involved incidents and transactions involving more than one of the three defendants, and the Government

properly alleged an overarching conspiracy which served to thread the incidents together. We thus find that, under these circumstances, joinder was proper and that the District Court did not abuse its discretion when it denied the severance motions.

Moreover, even if we were to find that the District Court abused its discretion in denying the motions for severance, "reversal is not required absent clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Hart, 273 F.3d 363, 370 (3d Cir. 2001) (quotations and citations omitted). In an attempt to demonstrate the requisite prejudice, Pickard argues that the contours of the alleged conspiracy were too amorphous, stringing together "individual acts of lawlessness," resulting in prejudice to him.

More specifically, Pickard points to his attempt to call his co-defendant Philbert to testify in order to rectify what he claimed was a misidentification. This testimony, Pickard argues, could not be procured due to his co-defendant's fears of self-incrimination. Bates makes a similar argument, claiming that the denial of his severance motion kept him from calling Philbert as a witness. Bates alleges that Philbert, and not he, was present at the time of an incident outlined in the charges against him. These arguments, however, must fail in light of the fact that, among other things, the Fifth Amendment privilege of any of the co-defendants resides with the co-defendant irrespective of the context be it an individual or joint trial in which it is invoked. See, e.g., United States v. McConnell, 749 F.2d 1441, 1445 (10th Cir.1984); U.S. v. Reavis, 48 F.3d 763, 767-68 (4th Cir. 1995).

Philbert similarly contends that the failure to sever subjected him to "prejudicial spillover" from the evidence presented against his co-defendants. We reject this claim. When reviewing claims of prejudicial spillover, we must ask "whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence." United States v. DePeri, 778 F.2d 963, 984 (3d Cir. 1985).

In this case, the record reflects that the District Court issued numerous curative instructions, often at the request of defense counsel, in order to restrict the evidence to issues and to the defendants for which it was offered. Furthermore, the jury was obviously able to compartmentalize its assessment of applicable evidence as to each defendant, as evidenced by the fact that the jury convicted Philbert, but not Bates, on certain of the counts which named both of them in the indictment. The Court's instructions to the jury that they "consider each count of the indictment and each defendant's involvement separately" further foreclosed the entry of impermissible prejudice into the proceedings. We thus find that the District Judge did not abuse his discretion when he denied Defendants' motions for severance.

### III. Sufficiency of the Evidence

"This court's standard of review of a denial of a motion for acquittal on the ground of insufficiency of evidence is narrow." Government of the Virgin Islands v. Williams, 739 F.2d 936, 940 (3d Cir. 1984). An appellant seeking a reversal of his conviction on this ground shoulders "a very heavy burden." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995). We do not believe that this burden has been met by any of the Defendants. Rather, when viewed in the light most favorable to the government, the evidence adduced certainly serves to support the convictions procured. While all three Defendants point to minor discrepancies between evidence introduced by the Government and evidence introduced by defense attorneys, it is clear to us from the arguments made and a review of the record that since we may not substitute our judgment for that of the very able jury, and since we believe that the evidence may reasonably have been construed to support the convictions, there exists no reason to overturn any of the convictions.

Similarly, we see no basis upon which to afford any Defendant a new trial, as no Defendant has demonstrated either that the presentation of newly-discovered evidence would have resulted in a different outcome in his case or that a new trial would be in the interest of justice. See, e.g., Fed. R. Crim. P. 33; Boyde v. California, 494 U.S. 370, 381, n.4 (1990); United States v. Charles, 949 F. Supp. 365, 368 (D.V.I. 1996).

### IV. Prosecutorial Misconduct

When we evaluate whether alleged prosecutorial misconduct has cast an impermissible taint upon a trial, we ask whether the alleged misconduct, here statements made by the AUSA, was "sufficiently prejudicial" to violate a defendant's due process

rights. See United States v. Scarfo, 685 F.2d 842, 849 (3d Cir. 1982).

Defendants Bates and Pickard argue that the AUSA made prejudicial comments in the course of the trial and during closing remarks, alluding to the Virgin Islands Police Department and public safety in general, warranting the grant of a new trial. Pickard further complains about references the AUSA made to Philomena White, a homeless woman whom Pickard says the AUSA implied that he murdered. Bates takes issue with comments made by the AUSA in relation to the Christopher Jacobs incident and the principle of double jeopardy.

In regard to the AUSA's remarks in closing, we observe initially that an AUSA is afforded considerable leeway in fashioning a summation, and that the government is entitled to summarize its case graphically and forcefully. United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1991). At all times, however, the government must refrain from inflammatory and highly emotional appeals which can easily divert the jury from a fair consideration of evidence of guilt and result in a trial that is manifestly unfair. See, e.g. Tucker v. Zant, 724 F.2d 882, 890 (11th Cir. 1984). A prosecutor may not attempt to sway a jury towards a guilty verdict by inflaming the jury's passions and prejudices. See, e.g., United States v. Homer, 545 F.2d 864, 867 (3d Cir. 1976).

In order for prosecutorial misconduct to merit a reversal, however, this Court must find that it is more probable than not that the alleged misconduct influenced the jury's ultimate verdict. C.f. United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990). "[A] conviction will be set aside when the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Walker, 2000 WL 378532, *10 (E.D.Pa. 2000) (quoting Darden v. Wainwright, 477 U.S. 168, 181, (1986)).

Against this backdrop, we analyze the specific contentions of the parties.

### A. References to White and the Jacobs Incident

Pickard first takes issue with references by the AUSA to Philomena White, a homeless woman whom Pickard says the AUSA implied that he had murdered. Pickard states that no charges were filed and no evidence was introduced in regard to White's death. The government argues that since the references to White originally came from a witness who claimed that the mention of White's name by Pickard let her know that he was threatening her, they were highly relevant and not improper.

During the trial, Michael Friedman, testifying for the government, stated that he heard Pickard say to White, "You don't know me. I'll shoot your mother scunt [sic]." Two other witnesses, Cora Mannix and Winston Tutein, testified that Pickard verbally threatened them by referring to White. Mannix testified that while Pickard was beating her, he said "keep [your] mouth shut, or else [you'll] be next," and when, referring to White, he made this threat while forming the shape of a gun with his hands and pointing his fingers at her forehead. Similarly, Tutein testified that Pickard, after punching him twice in the stomach, pulled out his gun and said "I'll shoot you. You want what happened to Philomena [White] to happen to you?"

Count 1 of the indictment clearly charged that the defendants conspired to "threaten, oppress and intimidate persons residing in and visiting St. Croix." The indictment further charged Pickard with using unreasonable force against Mannix and Tutein. In this context, references to Philomena White were highly probative of Pickard's intent to deprive Mannix and Tutein of their civil rights, and thus relevant to proving that the conduct alleged in the indictment.

Bates raises two issues concerning the Christopher Jacobs incident. In the first, the AUSA stated, at trial, that "Philbert was not asked any questions on [the Jacobs incident], was not asked any questions regarding that at all. That too speaks volumes, because he was not there". Bates claims that the AUSA engaged in misconduct by "impermissibly shift[ing] the burden of proof to [Bates by], commenting on his failure to ask Philbert questions relating to the [Jacobs] incident." In the second, the AUSA commented that if the jury were to believe Pickard's testimony that Philbert, and not Bates, was with him on the night of the Jacobs incident, and Philbert is convicted then "Bates can't be prosecuted because somebody has already been found guilty at the time. It's called double jeopardy." Bates claims that by referencing the benefits Bates could reap under double jeopardy, the AUSA impermissibly tried to persuade the jury to convict him.

In ruling on Bates's new trial motion, the District Court noted that the prosecutor had made an incorrect statement of the law which served "to bolster the government's

case regarding Bates's identification." We have carefully considered Bates's contentions regarding the AUSA's remarks, and we find Bates's arguments to be without merit. We agree with the District Court's analysis of the government's strong identification. We also note the curative and general jury instructions the District Court issued.

In sum, we do not find that the AUSA's remarks were "so egregious as to 'undermine the fundamental fairness of the trial and contribute to a miscarriage of justice'". United States v. Colletti, 984 F.2d 1339, 1344 (3d Cir. 1992) (concluding there was no plain error where prosecutor's comments were made during rebuttal, the jury was properly charged, and the government presented a strong case) (citing, inter alia, U.S. v. Young, 470 U.S. 1, 16 n. 14, (1985)).

  B. Comments about the Virgin Islands Police Department Public and  Safety

Both Pickard and Bates complain of comments that the AUSA made in which he referenced reform of both the government and the police department of the Virgin Islands in connection with their convictions.

In this case, some of the AUSA's comments clearly exceeded the parameters of what was germane to the case and proper for the jury's consideration. Among other things, the AUSA stated to the jury:

> The decision you have to make today, you may not realize how monumental the decision is because it's going to have repercussions from this day forward with the Virgin Islands Police Department, with the Virgin Islands government, because it's going to have an effect on training, funding all these things. Because now what you have heard on the evidence for the last two and a half weeks or so is going to be the bench mark for future activities, lawlessness of law enforcement employees. If you choose to ignore the evidence and find the defendants not guilt[y] at this time, the rest of the officers will know the jury found the officers not guilty so we know we can go this far. You're putting the community at risk. Can you really afford to put community at risk and ignore the evidence that's been presented to you? This is an opportunity where Legislators are not involved, Governor's [sic] are not involved. The community makes the decision and a lot of times changes come[] from the community up. You tell the powers that be these are the changes we want made. We're fed up. You have to make a change, and if you don't do it we have to take it into our own hands on the jury, based on the evidence, and get you in gear to start to make decisions....
>
> ...
>
> You have to decide, are you going to be the voice of the community at this point in time to try and corral the officers that are not doing their job, that have crossed the line? Because everything we've talked about is where they get excessive, they've used unreasonable force. ... You know many might think that the officers learned their lessons... but ask yourself what guarantee do you have that the behavior of the members of the Virgin Islands Police Department is going to be stopped at this point in time?... The question you have to decide...is what kind of police department do you want after today?

Upon the completion of the prosecutor's remarks, counsel for Pickard approached the bench and requested a curative instruction or, in the alternative, a mistrial. In response, the District Judge provided the following curative instruction:

> Ladies and gentlemen, in reaching your decision and your verdict as to each count, please remember that you are to consider only the evidence that has been accepted into evidence and that has been presented to you, and you should not take into account what effect that decision will have on the department of police or public safety in general. You are here only to decide on the guilt or innocence of the accused.

In response to Pickard's motion for a new trial based upon the AUSA's remarks, the District Court noted that "[b]ecause the remarks by the prosecutor were limited to a

small segment of the two and a half week trial, because curative instructions were given, and because the case against Defendant Pickard was strong, this Court finds that even if the prosecutor[']s statements were in error, the error was harmless because there was no substantial prejudice to Pickard."

The AUSA's remarks concerning the government and the Police Department of the Virgin Islands were clearly inappropriate and improper in the context of this case. We are not satisfied, however, that in the context of all the evidence presented, the remarks were so prejudicial as to amount to a denial of a fair trial. See, e.g., United States v. Helbling, 209 F.3d 226, 241 (3d Cir. 2000) (observing that when a prosecutor's remarks are over the line, and arguably even out of line, they warrant a new trial only if the defendant was prejudiced by them); Homer, 545 F.2d at 867 (noting that "trials are rarely, if ever, perfect and improprieties of argument by counsel to the jury do not call for a new trial unless they are so gross as probably to prejudice the defendant and the prejudice has not been neutralized by the trial judge before submission of the case to the jury."). We observe again that "[t]he prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence," Werme, 939 F.2d at 117. In ruling of Defendants' claim of prejudice, "we consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." Zehrbach, 47 F.3d at 1265.

Here, the AUSA's organization and compartmentalization of evidence, combined with the District Court's issuance of curative instructions shows that in the larger context of the lengthy and essentially carefully-run trial, no misconduct occurred that merits a reversal of any of the convictions.

We do note, however, that "[a] United States Attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the United States and he must exercise that responsibility with the circumspection and dignity the occasion calls for." United States v. Somers, 496 F.2d 723, 736 (3d Cir. 1974). While we conclude that a new trial is not warranted since the evidence of guilt for all three defendants was overwhelming, and defendants were not prejudiced, the AUSA's remarks were clearly  inappropriate. As we did in Helbling, "we urge the United States Attorney for [the Virgin Islands] to  remind his assistants of the limits of appropriate advocacy." 209 F.3d at 241.

### V. Conclusion

For the aforementioned reasons, we will affirm the convictions of Defendants.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.



/s/ Julio M. Fuentes
Circuit Judg