502 F.2d 759
 UNITED STATES of America
v.
Otto Samuel GULLO et al.
Appeal of Sheila HOLLOWAY, in No. 73-1941.
Appeal of Robert Clement POWELL, in No. 73-1942.
Appeal of Joseph BERENATO, in No. 74-1153.
 Nos. 73-1941, 73-1942 and 74-1153.
 United States Court of Appeals, Third Circuit.
 Argued June 14, 1974.
Decided Aug. 26, 1974, As Amended Sept. 18, 1974.
 
 Michael A. Kaplan, Tomar, Parks, Seliger, Simonoff & Adourian, Camden, N.J., for appellant in No. 73-1941.
 Arthur J. Abramowitz, Hyland, Davis & Reberkenny, Cherry Hill, N.J., for appellants in Nos. 73-1942 and 74-1153.
 Jonathan L. Goldstein, U.S. Atty., William T. Pizzi, Asst. U.S. Atty., Newark, ark, N.J., for appellee.
 Before STALEY, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In the unique circumstances of this case, the defendants were denied a fair trial when an improper question was directed to a witness by the prosecutor who then promised, but failed to call another witness who could correct the situation.
 
 
 2
 The defendants, Joseph Berenato, also known as 'Dragon,' Sheila Holloway and Robert Powell, were each convicted on counts of conspiracy to assault a federal officer and the assault itself. A co-defendant, Otto Gullo, was acquitted by the jury, and the actual perpetrator of the assault, Raymond George Taylor, who was also named in the indictment, pleaded guilty to the conspiracy count before the consolidated trial began.
 
 
 3
 The indictment grew out of an attempt by John Comey, and undercover federal narcotics officer, to make a 'buy' of drugs from the defendant 'Dragon' Berenato. The evidence pointed to the conclusion that the defendants were more interested in getting the cash which the agent had displayed during preliminary negotiations than in actually selling him drugs. Agent Comey testified that after having had discussions with Berenato early in the evening, he returned to a pre-arranged meeting spot in a parking lot adjacent to an apartment building in Lindenwold, New Jersey. At that time, Taylor got into the agent's car and directed him to another parking lot nearby. Once there Taylor brandished a gun and demanded the agent's money. Comey was able to get to his own revolver and shot Taylor several times.
 
 
 4
 During the course of redirect examination of the agent, the prosecutor posed the following question:
 
 
 5
 'There was some testimony on cross-examination directed to you asking you whether you shot Raymond George Taylor in the back while he was trying to run away. Are you aware that on May 21, 1973, Raymond George Taylor entered a plea of guilty?'
 
 
 6
 Defense counsel promptly objected and the trial judge, after a side bar conference, instructed the jury to disregard the question and whatever part of the answer might have been given.[1] The jury was then excused for luncheon recess, and the defendants promptly moved for a mistrial. After some discussion, the trial judge deferred ruling until after the recess.
 
 
 7
 When the court reconvened, the Assistant United States Attorney1A stated, 'I can circumvent the necessity of having argument on this. I now represent to the court that I will bring in George Taylor as a witness and he will so testify and there will be no Bruton problem because he will testify and all defense counsel will have an opportunity to cross-examine him as to the truth of that statement.' After further argument on the legal points involved, the court adjourned to provide counsel the opportunity for additional research.
 
 
 8
 On the following day, the prosecutor continued to present evidence and then rested the government's case without calling Taylor. The trial judge, sua sponte, then referred the jurors to the objectionable question and instructed them, inter alia, '. . . the fact that the defendant, Raymond George Taylor, who is named in the indictment, has pleaded guilty . . . is not evidence of the guilt of these four defendants . . .'
 
 
 9
 The Motion for Mistrial was renewed, and during argument the Assistant United States Attorney stated that he had decided not to call Taylor because the prosecutor had come to the conclusion that curative instructions would be legally adequate to remove any prejudice resulting from the improper question.
 
 
 10
 The trial judge refused the motion for mistrial on the basis of the instructions which he had given to the jury and stated that the defendants were free to have Taylor as their witness, although on the previous day their counsel had indicated that they did not wish to call him. The judge stated for the record that Taylor had apparently been under the influence of alcohol or drugs on the previous day and seemingly was still in that condition but that he could be brought in the following day for testimony.
 
 
 11
 After a noontime conference with Taylor, defense counsel put him on the stand in the late afternoon, and his testimony continued through the following morning. Taylor repudiated his guilty plea and generally was a most unimpressive witness. In the charge to the jury, the trial judge again cautioned about the effect of Taylor's plea.
 
 
 12
 It is the general rule in this Circuit that while the evidence of a guilty plea by a co-conspirator is not admissible, United States v. Toner,173 F.2d 140 (3d Cir. 1949), under some circumstances curative instructions are adequate to remove the harm where the pleas are to substantive counts. United States v. Farries, 459 F.2d 1057 (3d Cir. 1972), cert. denied, 409 U.S. 888, 93 S.Ct. 143, 34 L.Ed.2d 145; United States v. Restaino, 369 F.2d 544 (3d Cir. 1966).[2] The guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial because the crime by definition requires the participation of another. The jury could not fail to appreciate the significance of this and would realize, as the court said in a similar case, United States v. Harrell, 436 F.2d 606, 614 (5th Cir. 1970), that 'it takes two to tango.'[3] A plea by a co-conspirator thus presents a unique situation which may require the courts to scrutinize more closely the purported remedial effect of instructions to the jury. However, we need not decide here whether there should be a distinction between cases where the plea is to a substantive, rather than to a conspiracy count because the combination of events which occurred is enough to necessitate the grant of a new trial.
 
 
 13
 The prosecutorial question was improper, and the failure to abide by the unequivocal representation to call Taylor as a government witness compounded the prejudice to the defense. The record reveals, and it was amplified at oral argument before this court, that George Taylor was far from being an appealing witness. Though called by Dragon's counsel, George was not a saint. Defense counsel had made it clear that they did not intend to call him and, absent the necessity to counter the prejudicial question, would not have done so.
 
 
 14
 We cannot fault defense counsel for their unwillingness to accept the premise that curative instructions would remove the issue from the jurors' minds. The decision to call Taylor to the stand and meet the issue is understandable, but the defendants should not have been put in the position of weakening their case because of prosecutorial dereliction. Had the unfortunate question not been asked, it seems quite possible that the trial would have proceeded without Taylor's testimony. Neither side would have been harmed, and we may assume that the truth-finding process of the trial might have been aided. It is, after all, the quality and not the quantity of evidence which is important.
 
 
 15
 While the curative instructions which were given at the conclusion of the government's case were adequate, they came some twenty-four hours after the inadmissible question had been injected into the case.[4] The delay was induced by the prosecution's representation the Taylor would be called to testify. Whatever efficacy curative instructions possess cannot help but be weakened by the lapse of time. In addition, the incident was thus recalled to the attention of the jurors, and its import emphasized.
 
 
 16
 We think the total effect of the improper question, the delay in giving proper curative instructions, and the failure to call the witness as promised, thus pressuring the defense to produce an unwanted and questionably credible witness, combined to make the trial unsatisfactory.
 
 
 17
 The Assistant United States Attorney told the district court that he was not aware that his question was legally improper. We will accept his representation at face value and will not impute deliberate misconduct to him. Were it otherwise, we would invoke the provisions of 5.6(b) of the American Bar Association Standards Relating to The Prosecution Function and The Defense Function:
 
 
 18
 'It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.'
 
 
 19
 While we do not find knowing misconduct on the part of the prosecutor, we think it appropriate once more to express our concern with the all too frequent complaints of improper conduct by government attorneys. See the discussion of the problem in United States v. Somers, 496 F.2d 723 (3d Cir. 1974), and United States v. White, 486 F.2d 204 (2d Cir. 1973). Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934), has been quoted many times, but we think it bears repeating once more:
 
 
 20
 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'
 
 
 21
 This is a high standard indeed, but one to which we require conformance and which is accepted with pride by the overwhelming majority of United States Attorneys and their assistants.
 
 
 22
 We have reviewed the other contentions of the defendants and find that the alleged errors will be obviated by the retrial. A study of the trial court's charge reveals no error.
 
 
 23
 The judgments of the district court as to the defendants Berenato, Holloway, and Powell will be vacated, and a new trial will be granted.
 
 
 
 [1]
 The stenographic record does not disclose any answer having been made by the witness
 1A Counsel for the Government on appeal did not participate in the trial in the district court.
 
 
 [2]
 See also United States v. Davis, 487 F.2d 112 (5th Cir. 1973); United States v. Rothman, 463 F.2d 488 (2d Cir. 1972), cert. denied, 409 U.S. 956, 93 S.Ct. 291, 34 L.Ed.2d 504
 
 
 [3]
 The prosecutor's question did not specifically mention a guilty plea to the conspiracy count, but the jury was given the indictment, which still retained the name of Taylor as a defendant, for its use during deliberations. It may reasonably be inferred from this that the jury would assume that he had pleaded to both counts
 
 
 [4]
 Although the trial court did instruct the jury soon after the question was asked to disregard it and any answer which might have been given, we find a charge of such a general nature insufficient to meet the test enunciated by this Court in United States v. Newman, 490 F.2d 139, 144 (3d Cir. 1974): 'At the very least, the district court should have instructed that the testimony regarding (the co-defendant) was no proof whatsoever of (the defendant's) guilt and that the testimony proferred should be disregarded completely in determining the guilt or innocence of (the defendant).'