OPINION OF THE COURT
GARTH, Circuit Judge:
We have granted en banc review to resolve a conflict in our court’s jurisprudence *660 that has surfaced following the publication of United States v. Cohen, 171 F.3d 796 (3d Cir.1999), United States v. Gaev, 24 F.3d 473 (3d Cir.1994), and United States v. Gambino, 926 F.2d 1355 (3d Cir.1991), on the one hand, and United States v. Thomas, 998 F.2d 1202 (3d Cir.1993), on the other.[1] In the instant matter, the District Court permitted the government, pursuant to Federal Rule of Evidence (“Federal Rule”) 403, to introduce both the plea agreements and guilty pleas of two witnesses notwithstanding a representation by defense counsel that they would not challenge the credibility of such witnesses. The jury convicted all three defendants on a sole count of mail fraud. The panel majority reversed. We granted the government’s petition for rehearing and vacated the panel decision.[2]
We will now affirm the convictions entered against defendants Universal Rehabilitation Services (PA), Inc., and Richard Lukesh.
I
Universal Rehabilitation Services (PA), Inc. (“Universal”) is engaged in the business of providing various rehabilitative services, especially speech therapy, to elderly Medicare patients living in nursing homes. Universal would enter into contracts with several local nursing homes, and would thereafter send its speech therapists to treat patients on site. Rather than submit its bills directly to Medicare, Universal employed Independence Blue Cross (“IBC”) as an intermediary processor. Under this arrangement, Universal would submit its claims to IBC, which would process and organize such claims before sending them to Medicare.
Both federal law and the regulations promulgated by the Secretary of Health & Human Services authorize the Medicare program to pay only those claims that are deemed to be medically reasonable and necessary. In determining whether this criteria have been met with specific reference to speech therapy services, the Medicare program generally looks to four separate criteria: (1) the therapy must be safe and effective for treating the patient’s condition; (2) the services provided must be sufficiently complex insofar as only a certified speech pathologist can provide such services; (3) if restorative treatment were ordered, the pathologist must expect that the services would improve the patient’s condition significantly in a reasonable amount of time; and (4) the frequency and duration of the services must bear a reasonable and necessary relation to the patient’s condition. In this criminal matter, the government contends that both Üni-versal and its representatives intentionally altered the claims it submitted to IBC in order to meet these criteria.
Pursuant to a physician’s orders, a Universal therapist would evaluate a patient’s needs in order to determine initially whether treatment was necessary, and if so, propose a program of treatment. Once a physician approved the evaluation, this evaluation became a vitally important document for Medicare purposes insofar as it provided an assessment that the treatment was medically necessary for the patient. Indeed, Medicare reviewers specifically considered the evaluation in rendering reimbursement decisions.
Once treatment of a particular patient commences, Medicare requires that a physician certify each thirty days that continued treatment was medically necessary. *661 Further, Medicare will only pay for such continued treatment so long as the patient is progressing towards the goals referenced in the initial evaluation, and as such, Universal therapists would write notes concerning the patient’s progress. Universal would meet the thirty-day recertifi-cation requirement by having a physician sign a Medical Information Form (“MIF ”) that contained a summary of the previous thirty days of treatment and the prescribed course of treatment for the thirty days to come.
Universal would submit its Medicare claims to IBC electronically for IBC’s review. According to Universal, IBC’s requirements for the proper processing of its claims were elaborate, detailed, and extremely difficult with which to comply. For this reason, Universal and IBC often differed as to the proper interpretation of the Medicare regulations, and, indeed, the ultimate decision as to whether Medicare would reimburse a particular claim. Pursuant to a random auditing system, IBC ultimately requested Universal to provide documentation in support of certain claims that Universal had submitted. Irregularities in this documentation led IBC to investigate further, an investigation that uncovered the very “rewriting” scheme that is at issue in this criminal matter.
The government alleges that between the summer of 1988 and September 21, 1991, Universal and its representatives altered and rewrote certain Medicare claims in order to ensure that the Medicare program would reimburse such claims. Universal admits that this occurred, but claims that such rewriting had two forms: (1) honestly inserting omitted information so as to comply with Medicare regulations; and (2) altering initial evaluations, medical information forms, and progress certifications so as to reflect either the need for medical treatment or to certify that the patient was progressing because of treatment already provided.
As for this latter form of rewriting, the government contends that initial evaluations were altered so as to provide the “appearance” that speech therapy was medically necessary for the patient, medical information forms were made to appear as if a physician actually had reviewed the patient’s progress and recommended that the speech therapy continue, and finally, the therapists’ personal progress notes concerning the patient were modified to provide the appearance that., the patient was improving. In order to obtain the required physician’s signature, Universal and its representatives would photocopy the physician’s signature on the initial form and paste this photocopy on the altered form. Only after the rewriting occurred would the claims be submitted to IBC for review. All of these efforts, of course, were intended to Increase the likelihood that Medicare would reimburse Universal for the speech therapy services Universal claimed to have rendered.[3]
On March 31, 1995, a federal grand jury indicted appellants Universal, Universal’s Vice-President and Director of Finance, Attila Horvath (“Horvath”), Universal’s Director of Operations, Richard Lukesh (“Lukesh”), and three other defendants[4] on seventeen counts of mail fraud, in violation of 18 U.S.C. § 1341, and twenty-one counts of false claims, in violation of 18 U.S.C. § 287. Prior to trial, Julia Blum Bonjo (“Bonjo”) and Penny Martin (“Martin”) pled guilty to a sole count of mail fraud in connection with the scheme described above.[5] Universal, Horvath, and Lukesh, *662 also prior to trial, filed motions in limine with the District Court, attempting to prevent the government, pursuant to Federal Rule 403, from introducing such guilty pleas and plea agreements into evidence. At the same time, Universal, Horvath, and Lukesh each represented that they would not affirmatively challenge the credibility of either Bonjo or Martin during cross-examination.[6] The District Court held extensive oral argument on this issue, and reserved its ruling until after the trial had commenced and the government was prepared to call Bonjo as a witness. Citing to our opinion in United States v. Gaev, 24 F.3d 473 (3d Cir.1994), the District Court then denied the motions in limine and permitted the government to introduce both Bonjo and Martin’s guilty pleas and plea agreements as part of its principal case. In particular, the District Court stated that
if [Bonjo and Martin] testify the jury is going to certainly wonder whether or not they have been charged. It’s going to wonder perhaps what they have been promised by the prosecutor if anything and what they may be getting in return for their testimony.
I think in weighing all of those factors with the possible prejudice that I -am going to allow the Government to bring out the fact of the guilty plea and the fact of the guilty plea agreement.
App. at 1768.
After the government had introduced the evidence of Bonjo’s plea and concomitant plea agreement, the District Court immediately instructed the jury as follows:
Members of the jury, you’ve just heard ... evidence that this witness has plead [sic] guilty to a charge of mail fraud and which' involved matters of some of the things that she has testified to here in this trial.
I caution you that although you may consider this evidence, that is the evidence that she has entered a plea of guilty in assessing the credibility and the testimony of this witness, you should give it such weight as you feel it deserves.

You may not consider the evidence that she has entered a plea of guilty against any defendant, any in this case, nor may any inference be drawn against any defendant on trial by reason of this witness’s plea of guilty.

App. at 1966-67 (emphasis added). The District Court provided a similarly detailed instruction after the government elicited testimony concerning Martin’s plea agreement. App. at 2863-64. Finally, during its charge to the jury after the trial, the District Court instructed as follows:
Julia Blum Bonjo and Penny Martin entered into plea agreements with the Government. Such plea agreements are expressly approved as lawful and proper by the United States Supreme Court and are appropriate, are proper. Each witness’ decision to plead guilty is a personal decision about her own guilt. You may not consider this evidence against the defendant on trial nor may you draw any conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that a prosecution witness pled guilty to similar charges.
The testimony of such witnesses, as I indicated, should be scrutinized with caution and give it the weight that you think it should be given under all of the circumstances.
And I indicated to you during the trial that the fact that they entered pleas of guilty could not be considered by you in determining the guilt or innocence of *663 any of the people on trial here. The only reason the plea and the plea agreement were brought out was so that you would know all of the circumstances surrounding the entry of the plea, you’d know the terms under which the plea was entered and you could judge for yourselves whether the witness in the trial is testifying truthfully or whether the witness has a motive to embellish testimony or vary from the truth.
That is the only basis or the only reason why the plea and the plea agreement were admitted.
App. at 4829-30.
After deliberation, the jury found Universal, Horvath, and Lukesh guilty on count one of the indictment, which specifically alleged that Universal had engaged in mail fraud when IBC mailed a check to Universal representing a claim for treatment provided to one of its patients, Mildred Hynes, between February 15, 1989, and February 28, 1989. The jury, however, also found Universal, Horvath, and Lukesh not guilty on the remaining thirty-eight counts of the indictment. All three defendants then moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government had introduced insufficient evidence to support the jury’s verdict. On May 31, 1996, the District Court denied this motion and proceeded to sentencing.[7] On May 19, 1997, the District Court sentenced Universal to a fine of $25,000, Hor-vath to a period of three years probation, a fine of $10,000, and $705.20 in restitution, and Lukesh to three years of probation, a fine of $15,000, and $705.20 in restitution.
Universal, Horvath, and Lukesh appealed the judgment of conviction and sentence to this Court, arguing that the District Court abused its discretion in admitting the guilty pleas of Bonjo and Martin, and in denying their post-trial motions for judgments of acquittal on sufficiency of evidence grounds. In particular, the defendants argued that the fact that the jury had convicted them of the same count to which Bonjo and Martin had pled guilty — and had then acquitted them of the remaining thirty-eight counts of the indictment — proved that the admission of Bonjo and Martin’s plea agreements and guilty pleas had a clear prejudicial effect.
The government cross-appealed, arguing that the District Court erred in sentencing Horvath and Lukesh by failing to consider the loss stemming from the fraud alleged in the other thirty-eight counts of the indictment on which the jury acquitted Universal, Horvath, and Lukesh — “relevant conduct” pursuant to sections 1B1.3 and 2F1.1 of the United States Sentencing Guidelines — and in failing to provide required findings of fact with regard to the sentences the District Court imposed. The government also answered, the defendants’ argument concerning the guilty plea issue by arguing that a party cannot attack a District Court’s evidentiary ruling made prior to or during a trial by referencing a jury’s ultimate verdict. The government claimed that such hindsight could not be used to measure the District Court’s exercise of discretion.
In an opinion filed on February 11, 1999, the panel, one judge dissenting, reversed. More specifically, the panel held that there was insufficient evidence to convict Hor-vath of mail fraud, but that the government had introduced sufficient evidence to support the convictions of both Universal and Lukesh. As such, the panel majority remanded to the District Court to enter a judgment of acquittal for Horvath.
The panel majority also held that the District Court had abused its discretion in allowing the government to introduce evi- *664 deuce of Bonjo and Martin’s guilty pleas, and as a result, ordered the District Court to hold a new trial concerning the charges' levied against Universal and Lukesh. Because of this, the panel majority did not reach the sentencing issues presented in the government’s cross-appeal.
On April 15, 1999, the full court granted the government’s petition for rehearing en banc, and vacated the panel’s opinion and judgment.[8] See United States v. Universal Rehabilitation Servs. (PA), Inc., 167 F.3d 172 (3d Cir.1999). Our order focused rehearing on the District Court’s denial of the defendants’ motions in limine, which sought to prevent the government from introducing Bonjo and Martin’s guilty pleas. See id.; see also United States v. Universal Rehabilitation Servs. (PA), Inc., 173 F.3d 914, 915 (3d Cir.1999) (directing parties to “file supplemental mem-oranda ... set[ting] forth what factors should be considered by the District Court in ruling on the admissibility of a testifying co-conspirator’s guilty plea”). We now affirm the convictions of Universal and Luk-esh entered by the District Court.
II
The District Court exercised subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We possess appellate jurisdiction over Universal and Lukesh’s arguments of error pursuant to the final order doctrine of 28 U.S.C. § 1291.
Ill
A
We have previously held that the admission of a witness’s guilty plea and/or plea agreement[9] is governed by Federal Rule 403, see, e.g., United States v. Gaev, 24 F.3d 473, 478 (3d Cir.1994), and as such, the rule itself provides an appropriate starting point for our analysis. Federal Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Fed. R. Evid. 403. As the text of the rule indicates, evidence that is otherwise relevant and admissible may only be excluded if the probative value of the evidence is substantially outweighed by its prejudicial effect. For this reason, a number of courts have held that Federal Rule 403 creates a presumption of admissibility, and that district courts may utilize the rule only rarely to cause the exclusion of evidence. See, e.g., United States v. Morris, 79 F.3d 409, 412 (5th Cir.1996); Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d *665 1492, 1502 (11th Cir.1985). As one leading treatise states, “[i]f there is doubt about the existence of unfair prejudice ... it is generally better practice to admit the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge.” 2 Weinstein’s Federal Evidence, § 403.02[2][c], at 403-16 (Joseph M. McLaughlin ed., 1999); see also Glen Weissenberger, Federal Evidence, § 403.2, at 87 (3d ed. 1998) (“Rule 403 favors a presumption of admissibility.”).
We have also held that because the trial judge is present in the courtroom as the challenged evidence is offered, and is therefore “in the best position to assess the extent of the prejudice caused a party,” the trial judge must “be given a very substantial discretion in ‘balancing’ probative value on the one hand and ‘unfair prejudice’ on the other.” United States v. Long, 574 F.2d 761, 767 (3d Cir.1978) (emphasis added); cf. General Electric Co. v. Joiner, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (holding, in the context of expert testimony, that “deference ... is the hallmark of abuse of discretion review”). For this reason, we review a district court’s balancing analysis pursuant to Federal Rule 403 for an abuse of discretion, see In re Paoli R.R. Yard PCB Litig., 113 F.3d 444, 453 (3d Cir.1997), and accord great deference to the District Court’s ultimate decision.
A district court’s decision, therefore, cannot be reversed merely because we, as members of a reviewing court, possess a different view concerning the probative value or prejudicial effect of the challenged evidence. See Long, 574 F.2d at 767. In order to justify reversal, a district court’s analysis and resulting conclusion must be “arbitrary or irrational.”[10] Paoli, 113 F.3d at 453. Indeed, “[i]f judicial self-restraint is ever desirable, it is when a [Federal] Rule 403 analysis of a trial court is reviewed by an appellate tribunal.” Long, 574 F.2d at 767. With this in mind, we turn now to the application of these principles to the District Court’s admission of both Bonjo and Martin’s guilty pleas and the plea agreements that they executed with the government.
B
Any analysis pursuant to Federal Rule 403 must begin with a determination as to whether the evidence has probative value. It is well-settled that evidence of a testifying witness’s guilty plea or plea agreement may be introduced for probative, and therefore permissible, purposes. As this Court has identified on numerous occasions, such purposes include: (1) to allow the jury accurately, to assess the credibility of the witness; (2) to eliminate any concern that the jury may harbor concerning whether the government has selectively prosecuted the defendant; and (3)to explain how the witness has firsthand knowledge concerning the events about which he/she is testifying. See Gaev, 24 F.3d at 476; United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir.1991); United States v. Werme, 939 F.2d 108, 113 (3d Cir.1991); United States v. Inadi, 790 F.2d 383, 384 n. 2 (3d Cir.1986); see also United States v. Thomas, 998 F.2d 1202, 1208 (3d Cir.1993) (Rosenn, J., dissenting).
As we held in Werme, “[t]he most frequent purpose for introducing such evidence is to bring to the jury’s attention facts bearing upon a witness’s credibility.” Werme, 939 F.2d at 114 (citing Gambino, 926 F.2d at 1363). Universal and Lukesh, however, argue that witness credibility *666 ceased to be a proper purpose for the admission of Bonjo and Martin’s guilty pleas once they promised, through their motions in limine, not to attack Bonjo and Martin’s credibility. Jurors are instructed, however, in almost all cases, that they are to determine the credibility of all witnesses who testify. Indeed, they are so instructed even in the absence of an affirmative challenge to witness credibility. See 1A Kevin F. O’Malley et al., Federal Jury Practice & Instructions (Criminal), § 15.01, at 350 (5th ed. 2000) (“You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight that their testimony deserves.”).[11] We addressed this argument in Gaev:
When a co-conspirator testifies he took part in the crime with which the defendant is charged, his credibility will automatically be implicated. Questions will arise in the minds of the jurors whether the co-conspirator is being prosecuted, why he is testifying, and what he may be getting in return. If jurors know the terms of the plea agreement, these questions will be set to rest and they will be able to evaluate the declarant’s motives and credibility.... [A]n attack is not always necessary.
Gaev, 24 F.3d at 477. Our sister circuits concur. See, e.g., United States v. Pennington, 168 F.3d 1060, 1067 (8th Cir.1999); United States v. Maliszewski, 161 F.3d 992, 1003-04 (6th Cir.1998); United States v. Sanders, 95 F.3d 449, 454 (6th Cir.1996). As such, we are satisfied that the government may seek to introduce a witness’s guilty plea and/or plea agreement even in the absence of a challenge to the witness’s credibility.
Universal and Lukesh argue, however, that the Supreme Court’s recent opinion in Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), provides support for their argument. In Old Chief, the defendant was charged with violating a federal law, 18 U.S.C. § 922(g)(1), which prohibits an individual previously convicted of a felony from possessing a firearm. See id. at 174, 117 S.Ct. 644. Because the government was required, as a part of its prima facie case, to prove that the defendant had previously been convicted of a felony, it sought to present evidence of such a conviction. See id. at 175, 117 S.Ct. 644. Concerned that evidence of the previous crime would adversely influence the jury towards his defense, the defendant sought to prevent the government from introducing such evidence by stipulating that he had previously been convicted of a felony. See id. The District Court refused to compel the government to stipulate, and allowed the government to introduce evidence of the prior crime. See id. The Court of Appeals affirmed the conviction, finding that regardless of the defendant’s offer to stipulate, the government was entitled to prove the prior crime through the introduction of probative evidence. See id. at 177.
The Supreme Court reversed, holding that the District Court had abused the discretion with which it was vested under Federal Rule 403. See id. at 178. Although the Court reaffirmed the general principle that the government “is entitled to prove its case by evidence of its own choice,” it held that a defendant may avoid the introduction of potentially prejudicial evidence by presenting the government with an equally probative evidentiary alternative. Id. at 186. Finally, the Court held that a stipulation that the defendant had been convicted of a crime within the purview of the federal firearms law was of equal probative value to the government’s proffered evidence, and as such, the District Court had abused its discretion. See id.
Universal and Lukesh argue that they, similar to the defendant in Old Chief, pre *667 sented the District Court with an alternative that lacked the prejudicial effect of the government’s proffered evidence — a representation that they would refrain from any affirmative challenge to the credibility of either Bonjo or Martin. This alternative, however, presented the District Court with a much different scenario than that which faced the district court in Old Chief.[12] First, the defendant in Old Chief offered to stipulate to an element of the offense, whereas Universal and Lukesh simply offered not to render any affirmative challenge to Bonjo or Martin’s credibility. Second, and of greater importance, the Court’s holding in Old Chief was expressly premised on the Court’s belief that the defense’s offer to stipulate to the prior conviction and the government’s offer to introduce evidence of the same were equally probative. See id. at 191, 117 S.Ct. 644. In this appeal, however, Universal and Lukesh’s offer to refrain from affirmatively challenging Bonjo or Martin’s credibility did not, and could not, carry the same probative value on the issue of witness credibility as the introduction of Bon-jo and Martin’s guilty pleas.
Even if we were inclined to accept Universal and Lukesh’s arguments concerning credibility, however, we have identified other purposes for which the government sought to introduce Bonjo and Martin’s pleas and/or plea agreements. In particular, the pleas were admissible to counteract the possibility that the jury might believe that Universal and Lukesh were being selectively prosecuted. See, e.g., Gaev, 24 F.3d at 479. In other words, once Bonjo and Martin testified concerning their participation in the events for which Universal and Lukesh had been indicted, the jury reasonably might conclude that the government was attempting to single out Universal and Lukesh for prosecution.
Finally, courts have also held that a witness’s guilty plea is admissible to explain why the witness possesses firsthand knowledge concerning the events to which he or she is testifying. See, e.g., United States v. Halbert, 640 F.2d 1000, 1005 (9th Cir.1981). Although one might view this as a corollary to the credibility rationale, members of the jury may still question whether the witness’s testimony is worthy of belief. The fact that the witness has pled guilty to an offense concerning the very events that required his or her testimony makes it that much more likely that the testimony is truthful and reliable, as an individual typically does not plead guilty to an offense in the absence of culpability. As such, the government was entitled to introduce Bonjo and Martin’s pleas in order to answer any question the jury might have concerning how Bonjo and Martin possessed knowledge of the events and actions about which they testified.
As a result, we hold that evidence of Bonjo and Martin’s guilty pleas and their concomitant plea agreements were probative in terms of Federal Rule 403, despite Universal and Lukesh’s representation not to challenge Bonjo and Martin’s credibility.[13]
*668 C
We have repeatedly held that the government may introduce neither a witness’s guilty plea nor his or her concomitant plea agreement as substantive evidence of a defendant’s guilt. See, e.g., Gaev, 24 F.3d at 476; Gambino, 926 F.2d at 1363. We discussed the rationale for this rule at length in United States v. Toner, 173 F.2d 140 (3d Cir.1949):
The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.
Id, at 142, quoted in Bisaccia v. Attorney General, 623 F.2d 307, 312 (3d Cir.1980). As such, the bald introduction of a witness’s guilty plea concerning facts or events similar to that for which the defendant is on trial could have the prejudicial effect of suggesting to the trier of fact that the defendant should be found guilty merely because of the witness’s guilty plea.
Nonetheless, we have also consistently held that this prejudicial effect is typically cured through a curative instruction to the jury. See, e.g., Mujahid, 990 F.2d at 116; Werme, 939 F.2d at 113.[14] Our sister circuits, once again, concur in this understanding. See, e.g., United States v. Prawl, 168 F.3d 622 (2d Cir.1999); United States v. Tse, 135 F.3d 200, 207 (1st Cir.1998); Sanders, 95 F.3d at 454; see also Pierce, 959 F.2d at 1304. The jury in such cases should be instructed that it may not consider the guilty plea and/or plea agreement as evidence that the defendant is guilty of the offenses with which he/she is charged, but rather that such evidence is offered only to allow the jury to assess the witness’s credibility, to eliminate any concern that the defendant has been singled out for prosecution, or to explain how the witness possessed detailed first-hand knowledge regarding the events about which he or she testifies.
As recounted above, the District Court provided such an instruction at three separate occasions during the trial: after Bonjo testified, after Martin testified, and at the end of the trial when the District Court charged the jury. See text supra at pp. 662-63. The District Court’s instructions, *669 therefore, served to cure any prejudicial effect that might flow from the introduction of the guilty plea and/or plea agreement of a witness such as Bonjo or Martin.
Universal and Lukesh, however, argue that our previous jurisprudence in this area suggests that limiting instructions are not sufficient to neutralize such prejudicial effect in situations where the defendant is charged with conspiracy and the witness whose guilty plea and/or plea agreement the government introduces is the individual with whom the defendant has been alleged to conspire. The genesis of this concern emanates from United States v. Gullo, 502 F.2d 759 (3d Cir.1974), in which we stated:
The guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial because the crime by definition requires the participation of another. The jury could not fail to appreciate the significance of this and would realize ... that “it takes two to tango.” A plea by a co-conspirator thus presents a unique situation which may require the courts to scrutinize more closely the purported remedial effect of instructions.
Id. at 761 (footnote omitted). The Gullo panel stopped short of recognizing, however, any “distinction between cases where the plea is to a substantive, rather than to a conspiracy count.” Id. In the instant matter, it is significant that both Bonjo and Martin did not plead guilty to conspiracy charges, but rather pled guilty to substantive counts of mail fraud. App. at 1966, 2863. In any event, we held in Gaev that the fact that the witness had pled guilty to a conspiracy charge was merely another factor that a district court must weigh in engaging in the Federal Rule 403 analysis. See Gaev, 24 F.3d at 478-79.
Accordingly, we hold that the detailed limiting instructions provided by the District Court cured the prejudicial effect, if any, flowing from the introduction of Bon-jo and Martin’s guilty pleas and plea agreements.
D
As we stated above, we cannot reverse a District Court’s conclusion under Federal Rule 403 unless such a conclusion is held to be an abuse of discretion, which we have defined as “arbitrary or irrational.” Paoli, 113 F.3d at 453. The District Court heard argument on the defendant’s motion in limine and accompanying arguments concerning Bonjo and Martin plea agreements and guilty pleas at three separate instances during this criminal proceeding: (1) on May 3, 1995, prior to the testimony of FBI Agent Cook (App. at 806); (2) on May 9, 1995, prior to the testimony of Dr. Paul C. Moock, Jr. (App. at 1768); and (3) subsequent to trial in ruling upon the defendants’ post-trial motions. At each instance, the District Court carefully and meticulously weighed the above-mentioned factors of credibility, selectivity, and witness knowledge that inform the probative value versus prejudicial effect standard required by Federal Rule 403. At each instance, the District Court’s balancing was careful and comprehensive in concluding that the probative value of Bonjo and Martin’s plea agreements and guilty pleas outweighed any prejudicial effect. Recognizing our limited role as an appellate court, therefore, we cannot, and do not, hold that the District Court acted either arbitrarily or irrationally — and therefore did not abuse its discretion — in admitting Bonjo and Martin’s guilty pleas and plea agreements over Universal and Lukesh’s objection.
IV
Having held that the District Court properly exercised its discretion in admitting Bonjo and Martin’s pleas after consideration of the factors relevant to such a decision, it is evident that the opinions of United States v. Cohen, 171 F.3d 796 (3d Cir.1999), United States v. Gaev, 24 F.3d 473 (3d Cir.1994), United States v. Gambino, 926 F.2d 1355 (3d Cir.1991), and the cases that they followed, as well as Judge Rosenn’s dissent in United States v. Thomas, 998 F.2d 1202 (3d Cir.1993), reflect the correct jurisprudence in this Cir *670 cuit in connection with the admission of a witness’s guilty plea and plea agreement. To the extent, therefore, that other decisions of this Court do not comport with the analysis or conclusion announced today, they are overruled.
V
One procedural issue remains to be resolved. It will be recalled that the original panel majority had vacated the District Court’s judgment of conviction and sentence pertaining to Universal and Lukesh. Accordingly, the panel majority had not found it necessary to address the government’s cross-appeal that argued that the District Court erred in sentencing Lukesh.
We have held here that the District Court properly admitted the testimony of Bonjo and Martin as to their plea agreements and guilty pleas, and as a result, the new trial that the panel majority directed is not warranted. Rather, our decision today affirms the convictions of both Universal and Lukesh.
Because the panel majority did not find it necessary to consider the government’s cross-appeal, this Court has never rendered a decision as to whether the District Court erred in the sentence that it imposed upon Lukesh. Moreover, because as earlier noted, this Court — sitting en banc — did not consider the sentencing issue that the government initially raised, that issue is presently still open and undecided as a result of our decision to affirm Universal and Lukesh’s convictions.
Rather than decide this issue without briefing or argument, we will refer the government’s issue on sentencing to the original panel to determine whether resen-tencing should be ordered to include the relevant conduct of acquitted activity pursuant to sections 1B1.3 and 2F1.1 of the United States Sentencing Guidelines. See generally United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); United States v. Baird, 109 F.3d 856 (3d Cir.1997). In addition, the original panel should dispose of the government’s argument that the District Court should have made findings of fact concerning why it declined to consider the particular conduct in calculating Universal and Lukesh’s sentences. See, e.g., E.C. Ernst, Inc. v. Hoppers Co., 626 F.2d 324 (3d Cir.1980).

. Other cases addressing the admission of a testifying co-conspirator’s guilty plea and/or plea agreement include the following: Government of the Virgin Islands v. Mujahid, 990 F.2d 111 (3d Cir.1993); United States v. Werme, 939 F.2d 108 (3d Cir.1991); United States v. Inadi, 790 F.2d 383 (3d Cir.1986); Bisaccia v. Attorney General, 623 F.2d 307 (3d Cir.1980); United States v. Gullo, 502 F.2d 759 (3d Cir.1974); United States v. Toner, 173 F.2d 140 (3d Cir.1949).

. The government did not petition for rehearing with respect to the original panel's disposition of Attila Horvath’s appeal. See infra n. 8.

.Fraud has been pervasive in connection with Medicare reimbursement. See Georgia Court, Keeping an Eye on Medicare Fraud, Cincinnati Post, Dec. 16, 1999, at 4C (“The Office of the Inspector General at Health and Human Services estimated that $12.6 billion [of $176.1 billion in Medicare payments were] improper."); Medicare Contractors Aren’t Pursuing Fraud, Audit Shows, USA Today, Dec. 2, 1998, at Al.

. The other defendants were Vicki Meitus, Mary Mongoven Conroy, and Julia Blum Bon-jo-

. As stated above, Bonjo had been indicted with Universal, Horvath, and Lukesh — the ap *662 pellants in this appeal. Martin, however, pled guilty to a separate information filed by the government.

. Specifically, Lukesh’s Motion in Limine stated, in pertinent part, that "Defendant asserts that at the trial of this action he will not raise the guilty pleas/plea agreements on cross-examination nor seek to raise any inference on which the accomplices [sic] pleas of guilty would be admissible to rebut.” App. at 79.

. The District Court’s May 31, 1996 opinion also revisited the issue presently before the en banc court; namely, whether it was an abuse of discretion to allow the introduction of Bon-jo and Martin’s guilty pleas. The court concluded that it had not erred, reiterating its concern over selective prosecution and that the witnesses’ testimony would assist the jury in assessing credibility.

. Our en banc order only vacated the panel opinion and judgment insofar as it concerned Universal and Lukesh. As such, the panel’s holding that the government failed to present sufficient evidence to justify the jury's conviction of Horvath, and that the District Court therefore erred in failing to order a judgment of acquittal on Horvath’s behalf remains unaffected. Because our holding today revives the need to address the government’s cross-appeal as to the sentence the District Court imposed against Lukesh, we discuss that issue in text infra.

. Universal and Lukesh claim that the terms “plea” and "plea agreement” should not be utilized interchangeably and that the District Court's admission of Bonjo and Martin's plea agreements was an especially grave abuse of discretion. Although we agree that the terms are not synonymous, we believe that the distinction that Universal and Lukesh attempt to draw is one without a difference as it relates to the Federal Rule 403 analysis. Once one accepts the premise that a witness’s guilty plea has probative value, see text infra, especially with respect to the witness’s credibility, the introduction of the terms of the plea agreement becomes a necessary complement to disclose to the jury that the witness has not been promised a "sweetheart deal” in exchange for the testimony. See United States v. Pierce, 959 F.2d 1297, 1304 (5th Cir.1992). Further, Universal and Lukesh have failed to identify any prejudicial effect that could flow from the introduction of the terms of the witnesses’ plea agreements once the pleas themselves are accepted into evidence. As such, for purposes of our analysis, the District Court’s admission of Bonjo and Martin's pleas and plea agreements are treated equally.

. As with other instances in which a district court exercises its discretion, we also have held that when a district court issues a ruling pursuant to Federal Rule 403, it must specifically indicate its rationale. See Paoli, 113 F.3d at 453 (quoting United States v. Murray, 103 F.3d 310, 318 (3d Cir.1997)). In the present matter, there is no dispute that the District Court more than satisfied this requirement, as it expressly stated at the time of its ruling that it believed Bonjo and Martin's guilty pleas would assist the jury in assessing credibility and alleviate any concern the jury held over selective prosecution. App. at 1768.

. The District Court similarly charged the jury in the present matter. App. at 4825 ("[Y]ou are the judges of the facts and therefore in the process you are also the sole judges of the credibility of the witnesses and the weight their testimony deserves.”).

. Universal and Lukesh concede that their analogy to Old Chief is not perfect. See Appellants' Supplemental Memorandum, at 19.

. Section IV of Judge Roth's dissent advances an argument that not even Universal and Lukesh have asserted. Her dissent charges that we have offended both subsections (a) and (b) of Federal Rule 608 by holding that the District Court properly admitted the guilty pleas of Bonjo and Martin.
Federal Rule 608 prohibits the introduction of either “character evidence” or "specific instances of conduct” proved by extrinsic evidence in order to support a witness’s credibility. The dissent claims that Bonjo and Martin’s guilty pleas could be considered both “character evidence” and "specific conduct,” and because the government introduced the pleas — at least in part — to support Bonjo and Martin's credibility, Federal Rule 608 bars their admission.
The short answer to these arguments is that at no time did Universal or Lukesh ever raise Federal Rule 608 as a bar to the admission of Bonjo and Martin's pleas. Universal and Lukesh did not lodge an objection on this basis at any point during the District Court proceedings, and did not raise the issue before either the panel re *668 viewing the District Court's ruling or this an banc court. As a result, not only was this theory deemed irrelevant by Universal and Lukesh, but by not raising it, they have waived any benefit they may have derived from such an argument. See Fed. R. Evid, 103(a)(1); United States v. Gibbs, 739 F.2d 838, 849 (3d Cir.1984) (en banc). Moreover, Federal Rule 608(a) applies only to opinion and reputation evidence that is probative of one’s character, and it is beyond dispute that the guilty pleas do not fall into either of these narrow categories. Finally, courts have interpreted Federal Rule 608(b)’s bar on "specific instances of conduct” to prohibit the introduction of conduct only if it is being used to either attack or bolster the witness’s character (i.e., one's general disposition, see United States v. Doe, 149 F.3d 634 (7th Cir.1998)) for truthfulness. See, e.g., United States v. Pope, 132 F.3d 684, 688 (11th Cir.1998). Because the government did not introduce Bonjo and Martin's guilty pleas to prove that Bonjo and Martin generally spoke and/or acted truthfully, Federal Rule 608(b) is inappo-site.

. Universal and Lukesh argue that we should revisit our rule that any prejudicial effect inherent in the introduction of a witness’s guilty plea and/or plea agreement can be ameliorated through the use of a limiting instruction, arguing, inter alia, that juries cannot comprehend such limiting instructions. We are not persuaded by their arguments. See Fed. R. Evid. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.”); Spencer v. Texas, 385 U.S. 554, 562-63, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) ("[Tjhis type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that ... the jury is expected to follow instructions in limiting this evidence to its proper function.”).