**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ALPHELIOUS ANTOINE ROOKS,
*Defendant-Appellant.*

No. 00-4461

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ARTHUR LEE WILLIAMS,
*Defendant-Appellant.*

No. 00-4465

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-99-312)

Argued: June 7, 2001

Decided: August 16, 2001

Before WILKINSON, Chief Judge, and MICHAEL and
KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Barbara Lynn Hartung, Richmond, Virginia, for Appellant Rooks; Robert James Wagner, Richmond, Virginia, for Appellant Williams. James Brien Comey, Jr., UNITED STATES ATTORNEY'S OFFICE, Richmond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, David J. Novak, Assistant United States Attorney, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Alphelious Rooks and Arthur Williams appeal their convictions and sentences for several federal offenses relating to drug trafficking and firearms, including aiding and abetting in the use of a firearm to commit murder during drug trafficking. The defendants claim error as follows: (1) insufficiency of evidence, (2) admission of irrelevant and hearsay evidence, (3) prosecutorial misconduct, (4) failure of the district court to use a special verdict, and (5) application of a sentence enhancement in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). For the reasons that follow, we affirm.

I.

On February 25, 1997, Reynold Forde was selling crack cocaine out of a motel room at the Diamond Motor Lodge in Richmond, Virginia. Forde was selling the crack in large quantities, typically over an ounce per sale. Around 3:00 a.m., there was a knock at the door. Forde opened the door slightly, and two men burst into the room. One of them shot and killed Forde. The two men left the room immediately, and ran with a third man to a getaway car parked in the motel's lot. A fourth man was driving the getaway car, which then sped away.

Rooks and Williams were charged with various drug and firearm offenses surrounding Forde's murder. At trial Alex Jackson testified that he was the driver of the getaway car. Jackson said that earlier in the day he was with Rooks, Williams, and Jermonza Spencer in Williams's apartment. The four discussed robbing Forde for drugs and money and then left together for the motel. When they arrived at the motel, Jackson remained in the car while Rooks, Williams, and Spencer headed to Forde's room. A few minutes later Jackson saw them run from the direction of the room and get into his car. As Jackson was driving away, the three told him that Spencer had shot Forde. Because of the shooting, they were unable to recover any drugs or money. Jackson drove them back to Williams's apartment, where Spencer gave Williams the gun that was used to kill Forde. Williams agreed to dispose of the gun.

Other witnesses confirmed Jackson's version of events. Brad Brooks, a major drug dealer, was in Williams's apartment the day of the shooting. He confirmed that Rooks, Williams, Spencer, and Jackson left the apartment after they discussed their plans to rob Forde. He also confirmed that the four discussed the murder when they returned to the apartment. Connie Houchins, who was also in Williams's apartment that day, testified that the four discussed the murder when they returned. Two other witnesses also testified that Spencer described the murder the following day. Finally, an eyewitness testified that she saw Rooks run from the motel room immediately after the shooting. After a two-day trial the jury convicted Rooks and Williams of all counts, and the court sentenced both to life imprisonment.

II.

Rooks and Williams challenge the sufficiency of the evidence on their convictions for conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846, conspiracy to use or carry a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(o), and aiding and abetting in the use of a firearm to commit murder during drug trafficking in violation of 18 U.S.C. § 924(j). When we assess the sufficiency of the evidence in a criminal case on direct review, "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942).

The defendants first claim that there is insufficient evidence that they were at the motel at the time of Forde's murder. At trial the defendants conceded that Alex Jackson and Spencer were two of the four men who participated in the murder. However, they argued that Brad Brooks, and his fellow gang member, Raymond Jackson, were the other two men who went to the motel. Rooks in particular argued that the eyewitness testimony proved that Raymond Jackson, and not he, was at the motel. The government claimed that Rooks entered the motel room with Spencer. Tracy Payne, who was with Forde in the room when he was shot, described the men as 5'11" and 5'8". Rooks is only 5'3", while Raymond Jackson is 5'9". Further, Shawn Parris, who saw the men run from the motel room, described them as being 6', 5'11", and 5'9". Rooks's attack on the eyewitness testimony about the heights of the assailants does not carry the day, however. There is a substantial amount of other evidence establishing that Rooks and Williams were at the motel. Alex Jackson, the driver of the getaway car, placed Rooks and Williams at the motel. In addition, Alex Jackson and Brooks both testified that Rooks and Williams planned the crime, and then discussed it when they came back to the apartment. Houchins also testified that Rooks and Williams discussed the crime when they returned to the apartment. An eyewitness identified Rooks as one of the men who ran from the motel room. The evidence was therefore sufficient to establish that Rooks and Williams were at the motel.

The defendants next argue that the evidence is insufficient to show that they intended to distribute any drugs. The defendants were convicted under statutes that require proof of intent to distribute drugs. There is sufficient evidence that the defendants intended to rob Forde of drugs with the goal of distributing them. Alex Jackson and Brooks both testified that the defendants discussed robbing Forde. The defendants knew that Forde sold drugs in large quantities. Therefore, it is a fair inference that the defendants intended to recover a large quantity of drugs from Forde. Because the defendants intended to recover a large quantity of drugs, a jury could infer that they intended to distribute the drugs. *See, e.g.*, *United States v. Roberts*, 881 F.2d 95, 99 (4th Cir. 1989) (concluding that a defendant's intent to distribute may be inferred from quantities of drugs too large for personal consumption).

Williams challenges the sufficiency of the evidence for his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Alex Jackson and Brooks both testified that Spencer gave Williams the gun that was used to shoot Forde. Williams concedes that he is a convicted felon. Accordingly, there is sufficient evidence to support his conviction on the felon in possession count.

### III.

The defendants challenge the admission of several items of evidence. As a general rule, we review the admissibility of evidence for an abuse of discretion. *See, e.g.*, *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995). At trial the government and Rooks stipulated that Rooks had two prior drug trafficking convictions. Rooks contends that the stipulation was improperly submitted to the jury because he, in fact, had only two prior convictions for simple possession of drugs. Because Rooks did not object at trial, we review for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under plain error review a defendant must show that the error affected his substantial rights. *See id.* In other words, the defendant must show that the error caused him prejudice. *See, e.g.*, *United States v. Strickland*, 245 F.3d 368, 379 (4th Cir. 2001). Rooks cannot show that the erroneous stipulation caused him any prejudice. Although Rooks vigorously contested the claim that he participated in the murder, his lawyer twice told the jury that Rooks was a drug dealer. Accordingly, the jury knew, apart from the stipulation, that Rooks had trafficked in drugs. The erroneous stipulation therefore did not cause him any prejudice.*

Rooks also challenges the admission of evidence of his prior drug dealings. Because Rooks objected to the introduction of this evidence, we review for an abuse of discretion. *See, e.g.*, *Bostian*, 59 F.3d at 480. Rooks claims that the evidence merely went to establish that he had a propensity for drug trafficking. The government, on the other hand, claims that the evidence was properly admitted under Rule

---

*Rooks notes that the prosecutor misstated to the jury that Rooks had three prior convictions, when in fact he had stipulated to only two. Again, because the jury knew that Rooks was a drug dealer, he was not prejudiced by the prosecutor's misstatement.

404(b) because it goes to the issue of Rooks's intent. *See* Fed. R. Evid. 404(b) (providing that evidence of "other crimes" is admissible as proof of intent). The government had to show that Rooks intended to rob Forde of drugs for distribution. The government claims that evidence that Rooks was a drug dealer supports a finding that Rooks intended to acquire the drugs for distribution, as opposed to acquiring them for personal consumption. Ultimately, we need not decide whether the district court erred in admitting the evidence. Even if we thought that the evidence was inadmissible, the error would be harmless. Again, because Rooks's lawyer told the jury that he was a drug dealer, evidence of his prior drug dealing was not prejudicial.

Finally, the defendants challenge the admissibility of Elton Hunter's and Merritt Dixon's testimony that Spencer told them that the four (Spencer, Rooks, Williams, and Jackson) intended to rob Forde of drugs. The defendants claim that this testimony was inadmissible hearsay. Because the defendants did not object at trial, our review is for plain error. *See Olano*, 507 U.S. at 731-32 (1993). Even if this evidence was admitted in error, the defendants cannot show prejudice. Alex Jackson also testified that the defendants intended to rob Forde of drugs. Brooks testified that the defendants intended to rob Forde; a jury could infer from Brooks's testimony that the defendants intended to take both money and drugs from Forde. In light of Brooks's and Alex Jackson's testimony, Hunter's and Dixon's testimony about Spencer's statements was cumulative evidence. Accordingly, the defendants cannot show prejudice.

## IV.

The defendants claim that they are entitled to a new trial because of the prosecutor's improper comments during closing argument. Specifically, the defendants challenge the prosecutor's statements that Spencer's guilty plea was evidence that the defendants were also guilty. Because the defendants did not object to the comments at trial, our review is for plain error. *See Olano*, 507 U.S. at 731-32. In order to obtain a new trial based upon prosecutorial misconduct (1) the prosecutor's remarks or conduct must have been improper and (2) the remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. *See United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993).

The prosecutor's comments were improper. Spencer ultimately pled guilty to Forde's murder. The prosecutor argued that the fact that Spencer pled guilty was evidence that the defendants participated in the crime. "It is a well-accepted principle that evidence about the conviction of a co-conspirator is inadmissible as substantive proof of the guilt of a defendant." *See id.* (internal quotation marks omitted). *See also United States v. Miranda*, 593 F.2d 590, 594 (5th Cir. 1979); *United States v. Gullo*, 502 F.2d 759, 761 (3d Cir. 1974). The prosecutor violated this principle by making substantive use of the fact that Spencer pled guilty. Therefore, the prosecutor's comments were improper.

However, the prosecutor's comments did not deprive the defendants of a fair trial. The defendants not only conceded that Spencer was the gunman, but they actually requested that the judge inform the jury that Spencer had pled guilty. As the defense explained to the jury, Spencer was the gunman, and the defendants were innocent. Therefore, this case presents a unique situation in which the prosecutor's emphasis on a co-conspirator's guilty plea was not unduly harmful to the defense. Further, the district court gave a limiting instruction that cautioned the jury not to consider the fact that Spencer pled guilty in determining whether the defendants were guilty. In light of the unique circumstances of this case, we cannot conclude that the defendants were prejudiced to such an extent that they were deprived of a fair trial. As a result, they are not entitled to a new trial.

V.

The defendants claim that the district court erred by failing to submit a special verdict form to the jury for the third count of the indictment. Because the defendants did not request a special verdict, our review is for plain error. *See United States v. Bowens*, 224 F.3d 302, 314 (4th Cir. 2000). The third count of the indictment charged the defendants with aiding and abetting in the use of a firearm to commit murder during a drug trafficking offense. The indictment charged that this was in violation of §§ 924(c) & (j). Section 924(c) prohibits the use or carrying of a firearm during a drug trafficking offense. Section 924(j) provides for enhanced penalties under § 924(c) if the firearm was used to commit murder. The jury returned a general verdict of guilty on the third count. The defendants claim that the jury may only

have found them guilty of carrying a firearm in violation of § 924(c). In other words, the defendants claim that a special verdict should have been submitted, which would have allowed the jury to indicate specifically whether it found the defendants guilty of aiding and abetting in the use of a firearm to commit murder in violation of § 924(j). *See United States v. Quicksey*, 525 F.2d 337, 340-41 (4th Cir. 1975) (holding that when a general verdict is returned on a count alleging two separate crimes, defendant may only be sentenced on the lesser crime). The defendants' argument is meritless. The judge instructed the jury that in order to convict on the third count, it had to find that the defendants "murdered Reynold Curtis Forde . . . or aided [and] abetted in his murder." Thus, there is no possibility that the jury found the defendants guilty of only carrying a firearm in violation of § 924(c). Instead, the jury convicted the defendants of aiding and abetting in the use of a firearm to commit murder during a trafficking offense in violation of § 924(j).

VI.

The defendants claim that their sentences were enhanced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The defendants were convicted of drug conspiracy in violation of 21 U.S.C. § 846. At sentencing the district court applied the cross reference contained in U.S.S.G. § 2D1.1(d)(1). Under that section if the court determines that during the course of the drug conspiracy a victim was killed under circumstances that constitute first degree murder, an offense level of 43 applies. An offense level of 43, regardless of the defendant's criminal history, carries a mandatory life sentence. The defendants argue that the enhancement violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The defendants do not argue that their sentences were enhanced beyond the statutory maximum for drug conspiracy. (They were indicted for conspiring to traffic in over 50 grams of crack, which under 21 U.S.C. § 841(b)(1)(A) carries a maximum penalty of life in prison.) Rather, they argue that *Apprendi* prohibits a judge from determining facts at sentencing that were not presented to the jury. The *Apprendi* rule has not been violated in this case. *Apprendi* held that sentencing factors (other than recidivism) may not be used to enhance a defendant's sentence beyond the statutory maximum. *Id.* at 490. As we concluded in *United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 1393 (2001),

the federal Sentencing Guidelines do not implicate *Apprendi* because the Guidelines provide that a sentence cannot exceed the statutory maximum. *See* U.S.S.G. § 5G1.1(a). Accordingly, the defendants' *Apprendi* argument is without merit.

Whether the enhancement passes muster under *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), presents a closer question. *McMillan* held that, as a general rule, sentencing factors can be used to enhance a defendant's sentence within the statutory maximum. *Id.* at 87-88. However, the Court cautioned that some enhancements that do not exceed the statutory maximum may nonetheless be unconstitutional. Specifically, the Court indicated that when the enhancement is the "tail which wags the dog of the substantive offense," the enhancement may be unconstitutional. *Id.* at 88. In this case, the probation officer did not calculate the defendants' sentences without the first degree murder enhancement. However, a fair assessment is that given the drug quantities involved, Rooks was facing a maximum sentence of twenty-five years, while Williams faced twenty-seven years. After the application of the murder enhancement, they received mandatory life sentences. At bottom, the defendants were sentenced for first degree murder even though they were only convicted of drug conspiracy. Ultimately, we must affirm because we rejected an identical claim in *United States v. Crump*, 120 F.3d 462 (4th Cir. 1997). Crump was convicted of drug conspiracy. The district court applied the first degree murder enhancement and sentenced him to life. We held that the enhancement did not violate the Constitution. *See id.* at 468. The essential facts of *Crump* are indistinguishable from the facts of this case. Accordingly, we affirm the defendants' sentences. *See Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court.").

## VII.

We affirm the convictions and sentences of each of the defendants in this case.

*AFFIRMED*